Argued June 4, modified July 1, rehearing denied September 9, 1919.

# DUNCAN LUMBER CO. *v.* WILLAPA LUMBER CO.

### (182 Pac. 172; 183 Pac. 476.)

**Appearance—Defects in Process—Waiver—Answer upon Merits.**

1. The filing of an answer upon the merits constitutes a voluntary appearance and a waiver of any defect in the service of summons, though plea in abatement challenging jurisdiction of the person is joined with plea to the merits, notwithstanding Section 74, L. O. L., as amended by Laws of 1911, page 144.

[As to test whether appearance is special or general, see note in Ann. Cas. 1914A, 1189.]

**Evidence—Written Contract—Sales—Negotiations.**

2. Where written order constituted complete contract, evidence of letters and telephone conversation between the parties during the negotiations, whereby it was agreed that terms should be different from those contained in the written instrument subsequently signed, was not admissible.

**Sales—Failure to Deliver—Measure of Damages.**

3. The measure of damages for failure to deliver merchandise, in accordance with contract, if the articles have a market value, is the difference between the contract price and the market value at time and place of delivery.

**Sales—Failure to Deliver—Damages—Purchase of Goods Elsewhere.**

4. While buyer is not required to go into the market and purchase goods elsewhere before bringing his action for seller's failure to deliver, he may, if he sees fit, do so, and if in a successful effort to minimize the damage he incurs expense, he may recover such expenditures as an element of damages, so long as the total recovery does not exceed the difference between the contract price and market price.

**Appeal and Error—Review—Harmless Error.**

5. In buyer's action for seller's failure to deliver spruce lumber, admission of evidence as to market value of higher grade of spruce than that called for by the contract was harmless to seller, where only effect of such evidence was to explain prevailing high price of all grades of spruce.

**Sales—Failure to Deliver—Extension of Time for Delivery—Evidence.**

6. In buyer's action for seller's failure to deliver, evidence as to agreement to extend time for delivery *held* sufficient.

**Sales—Failure to Deliver—Date of Breach—Evidence.**

7. In buyer's action for seller's failure to deliver, where there was evidence of agreement to extend time of delivery, seller's letter to

buyer, declining to make further deliveries, was admissible to fix date of breach.

### Appeal and Error—Discretion of Court—Rebuttal Testimony.

8. Discretion of court in admitting evidence designed to prove original cause of action, by plaintiff on rebuttal, is not reviewable in absence of manifest abuse.

### Trial—Rebuttal Evidence—Discretion.

9. In buyer's action for seller's failure to deliver lumber, where evidence as to market value was allowed to take a wide range upon the part of both litigants, and seller introduced evidence of individual sales from June to September, court's action in permitting plaintiff, during rebuttal, to introduce evidence of three sales during months of April, August and December was not manifest abuse of discretion.

### Damages—Interest—Unliquidated Claim.

10. Buyer suing seller for failure to deliver is not entitled to interest on his damages.

### Trial—Instructions—Evidence.

11. Instructions directing jury to "do the best you can, according to all the evidence that has been introduced," *held* not subject to objection that it permitted jury to indulge in speculation in reaching verdict.

### ON REHEARING.

### Pleading—Inconsistent Defenses—Joining Pleas in Abatement and to Merits—Effect.

12. Section 74, L. O. L., as amended by Laws of 1911, Chapter 99, providing defendant may set forth by answer as many counterclaims as he has, including pleas in abatement, does not change the rule that defenses must be consistent, and that, where answer first denies a thing and then admits it, the latter controls; so a plea in abatement, on the ground that jurisdiction of the person had not been acquired, is overcome by a plea to the merits, in effect an allegation of general voluntary appearance.

### Courts—"Jurisdiction of the Subject Matter"—How Conferred.

13. "Jurisdiction of the subject matter" means authority of the court to hear and determine the kind of case presented, is conferred by law, and lack of it, under Section 72, L. O. L., cannot be waived.

### Courts—Jurisdiction of Person—How Conferred.

14. Jurisdiction of a person *sui juris* depends either on proper service of summons on him or on voluntary appearance.

### Appearance—General Appearance After Special Appearance.

15. Though defendant's appearance be a special one, limited to a particular purpose, yet if he appears and offers contest on the merits of the complaint, it is a general appearance, giving jurisdiction of the person as to all matters in controversy.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

## Department 1.

This is an action in which plaintiff seeks to recover damages for the breach of a contract. The substance of the complaint is, that the parties entered into a contract dated March 22, 1917, whereby defendant agreed to manufacture and sell to plaintiff certain spruce lumber, at an agreed price of $42 per thousand feet, f. o. b., Chicago; that defendant was to pay the freight and pay plaintiff a commission of 5 per cent, and that the delivery was to be completed not later than May 30, 1917. It is then alleged that defendant failed and refused to deliver a large portion of the lumber, the shortage amounting to 344,483 feet; that by mutual agreement the date of delivery was extended to August 18, 1917, at which time defendant failed and refused to make further delivery. It is further averred that on August 18, 1917, and for some days subsequent thereto, the market price of spruce lumber of the kind and quality specified in the contract, at Chicago, was $75 per thousand feet, which allegation is followed by computations showing that the difference between the contract price and the market price at that date was $11,928.18, which plaintiff fixes as the amount of his loss. It should also be observed that the complaint further alleges that the defendant is a Washington corporation, having its principal place of business at Raymond, Washington,

"and carrying on and transacting business and sales of its products in the State of Oregon; that it has not appointed any attorney in fact or resident agent upon which service or other process may be had."

Service of summons was made by serving it personally upon Howard Jayne, secretary of the defendant corporation, during his temporary visit to Portland.

Thereafter, defendant appeared specially, with a motion to quash the service of summons, upon the ground that the defendant was a foreign corporation, having no established agency in Oregon, and not transacting any of its business in this state. This motion was denied, and thereupon the defendant simultaneously filed a plea in abatement, and an answer to the merits. The former consisted of recitals relating to the condition of defendant as a foreign corporation, and, as in the motion to quash the service of summons, challenged the court's jurisdiction of defendant's person, as sought to be acquired by the personal service upon its secretary while he happened to be visiting Portland upon his private affairs.

The answer to the merits begins with this paragraph:

"For a further and separate answer to plaintiff's amended complaint, and pursuant to Chapter 99, General Laws of Oregon for the year 1911, and not waiving its plea in abatement hereinbefore set forth, and not giving this court jurisdiction over it, defendant for answer to plaintiff's amended complaint herein, admits, denies and alleges as follows:"

It further consists of a general denial of the allegations of the complaint, and then pleads affirmatively that on March 22, 1917, plaintiff sent from Portland to defendant at Raymond, Washington, an order for certain spruce lumber, which is the order referred to in the complaint; that defendant, by letter of April 5th, rejected the order, advising plaintiff that it could not accept it, but was willing to accept a portion of it, and buy what it could from the neighboring mills, making the best shipment possible, but that it would not make a definite promise of delivery; that on April 9th plaintiff accepted defendant's offer as contained

in its letter of April 5th, and in its letter of acceptance asked defendant to return its original order dated March 22d, being order Number 1400, for the purpose of completing its files, and that in compliance therewith, defendant returned the order; that said order of March 22d, as modified by defendant's letter of April 5th and plaintiff's letter of April 9th, constituted the agreement between the parties, and is the agreement referred to in the complaint; that such agreement did not bind defendant to manufacture, sell or deliver any specific amount of lumber at any specified time, but that defendant was willing to accept a portion of the order, but did not undertake to make delivery at any specified time. It concludes with a prayer for judgment for its costs and disbursements. A reply was filed, denying the affirmative matter of the answer, and thereafter the issues joined by the plea in abatement and reply thereto were tried by a jury, resulting in a verdict in favor of plaintiff, and then followed a trial by jury upon the merits, resulting in a verdict and judgment in favor of plaintiff for $7,500 with interest at 6 per cent per annum from August 18, 1917, amounting to $185 and defendant appeals.

MODIFIED.

For appellant there was a brief over the names of *Messrs. Welsh & Welsh* and *Messrs. Angell & Fisher,* with an oral argument by *Mr. Homer D. Angell.*

For respondent there was a brief and an oral argument by *Mr. J. G. Arnold.*

BENSON, J.—1. A considerable number of the assignments of error are based upon the contention that the court never acquired jurisdiction of the person of

the defendant, and all of these may be considered together.   At the outset it must be observed that the defendant has filed an answer upon the merits, which, according to a long line of decisions of this court, constitutes a voluntary appearance and a waiver of any defect in the service of summons.   Among these are: *Rogue River Mining Co.* v. *Walker,* 1 Or. 341; *Harker* v. *Fahie,* 2 Or. 89; *White* v. *North West Stage Co.,* 5 Or. 99, 102; *Kinkade* v. *Myers,* 17 Or. 470 (21 Pac. 557); *Belknap* v. *Charlton,* 25 Or. 41 (34 Pac. 758); *Fildew* v. *Milner,* 57 Or. 16 (109 Pac. 1092).   The case of *Belknap* v. *Charlton,* 25 Or. 41 (34 Pac. 758), may be regarded as the leading case upon the subject in this jurisdiction, having been many times cited with approval, the latest being in *Felts* v. *Boyer,* 73 Or. 83 (144 Pac. 420), and *Roethler* v. *Cummings,* 84 Or. 442 (165 Pac. 355).   In the case of *Belknap* v. *Charlton,* 25 Or. 41 (34 Pac. 758), Mr. Justice Bean says:

"It is claimed by the plaintiffs that while a defendant may appear specially to object to the jurisdiction of the court over him on account of the illegal service of process (*Kinkade* v. *Myers,* 17 Or. 470 (21 Pac. 557), he must keep out of court for every other purpose, and that any appearance which calls into action the power of the court for any purpose except to decide upon its own jurisdiction, is a general appearance, and waives all defects in the service of process, and many authorities are cited to sustain this position. The principle to be extracted from the decisions on this subject is, that where the defendant appears and asks some relief which can be granted only on the hypothesis that the court has jurisdiction of the cause and the person, it is a submission to the jurisdiction of the court as completely as if he had been regularly served with process, whether such an appearance by its terms be limited to a special purpose or not. * * This seems to be a reasonable rule, and one which will adequately protect the rights of the parties, and

it determines the effect of defendant's appearance from the nature of the relief which he seeks to obtain. If he asks the court to adjudicate upon some question affecting the merits of the controversy, or for some relief which presupposes jurisdiction of the person, and which can be granted only after jurisdiction is acquired, he will be deemed to have made a general appearance, and to have submitted himself to the jurisdiction of the court, and cannot, by any act of his, limit the appearance to a special purpose."

In the present case, the defendant appears to have acted upon the theory that since the amendment of Section 74, L. O. L., General Laws of Oregon for 1911, page 144, a plea in abatement, challenging the jurisdiction of the person may be joined with a plea to the merits without effecting a waiver of defects in the service of the summons. But this does not follow. It is true, that when the defect in the service does not appear upon the face of the record, it may be called to the attention of the court by a plea in abatement, and it is also true, that in all proper cases the plea in abatement may be joined with other defenses and counterclaims in the same answer, but there is nothing in the statute which tends to neutralize the established legal effect of pleading to the merits, which is, that it is a voluntary submission to the jurisdiction of the court. From the moment that defendant filed its answer there was no further question of jurisdiction left in the case.

Turning then, to the questions arising upon the trial upon the merits, the defendant first urges that the court erred in excluding from the consideration of the jury two letters which were identified as exhibits "C" and "D" and also the substance of a telephone conversation between the secretary of the defendant and the president of the plaintiff. These three as-

signments are here grouped together for the reason that they present the same problem.  The two letters, in their order, are as follows:

EXHIBIT "C."

"April 5, 1917.

"Duncan Lumber Co.,
    "Northwestern Bank Bldg.,
        "Portland, Oregon.
"Gentlemen:—
    "We are in receipt of yours of the 3rd inst. requesting return of blue sheet acknowledgment of your order #1400.  This order came into the office during the writer's absence in the east.  Last week he called at your office and talked with Mr. Duncan regarding date of shipment mentioned in your letter.
    "In the first place we wish to state we cannot accept this order as it stands and complete shipment before next fall.  We are willing to accept a portion of it and buy what we can from neighboring mills, making the best shipment possible, but we are not willing to go on record with a definite promise of delivery.
    "We wish you would call us by phone and talk this matter over with us or write us fully how you wish us to handle it.
                "Yours very truly,
                    "WILLAPA LUMBER COMPANY.
                            "JAYNE,
                                "Secretary."

EXHIBIT "D."

"April 9, 1917.

"File: Order #1400.
"Willapa Lumber Company,
    "Raymond, Washington.
"Gentlemen:
            "Attention Howard Jayne, Sec.
    "Referring to your letter of April 5th, and confirming phone conversation, kindly let us have return acknowledgment of our order above numbered to complete our files and please do all that you possibly can toward getting this material ready for shipment.  As

soon as you have any of this material ready for loading, order car, showing on the face of your car order:

" 'Material for the Construction of System Cars—
            Order Duncan Lumber Company '
and send us a copy of this car order and we will give
the matter of having equipment placed at your plant,
immediate attention.

"I hope that you will give this order the vigorous
attention that it demands, and with best wishes, remain
                  "Yours very truly,
                        "DUNCAN LUMBER COMPANY.
                              "G. M. DUNCAN,
                                    "President.

"Cars furnished as above must not be diverted to
other loadings."

In regard to the telephone conversation, which was
excluded, the defendant's secretary, Jayne, was permitted to testify as follows:

"Well, as I understood, it was practically agreed
between us that we were to furnish what we could and
buy from neighboring mills when we could, and Mr.
Duncan was to buy the rest outside. That is the reason I signed the order."

The order, which was signed by Jayne after the exchange of the foregoing correspondence, and after the
telephone conversation above referred to, and which
is the foundation of plaintiff's action, reads as follows:

                              "#1400.
            "Portland, Oregon, Mar. 22nd, 1917.
"To Willapa Lumber Company, Raymond, Wash.
"Ship to Duncan Lumber Company, Minnesota Transfer, Minn.
"Route —— N. P.

"It is understood, unless otherwise specified, that
all lumber shipped on this order will conform to the
standard classification, grading and dressing rules
adopted by the West Coast Lumber Manufacturers'

Association and is guaranteed not to exceed Association weights.

"Load all cars to capacity in accordance with railway tariffs governing, and make proper notation on Bill of Lading to protect actual weight of contents. Any excess freight charges resulting through your failure to do this will be for your account.

"Prices attached are f. o. b. cars Pullman, Ill.

"Terms—Regular. (Prices include 5% commission to us.)

B. & B. tr. Spruce Refrigerator Car Lining Strips, Kiln Dried $42.00

| 6,500 ft. | 1x6"— | 5' | S 2 S | to 13/16", edges rough. |
| 7,000 " | " | 9' | do. | |
| 19,500 " | " | 14' | " | |

B. & B. tr. Spruce Refrigerator Car Lining, Kiln Dried, $42.00.

| 39,000 ft. | 1x6"—5' | S 2 S T & G | to 13/16x5⅛", face. |
| 12,500 " | " | 6' 6" | do. |
| 91,000 " | " | 9' | " |
| 16,000 " | " | 12' | " |
| 128,000 " | " | 14' | " |
| 112,000 " | " | 16' | " |

As per Sketch 'C' B/P #114–1400.

"Shipment: Commence promptly and complete by May 15th, to 30th, 1917.

"Note: When ordering cars show on requisition 'Material for Duncan Lumber Co. for construction Northern Pacific System Refrigerator Cars—final destination Pullman, Ill.,' and send us copy of your car order. Special arrangements will be made to furnish cars promptly when so ordered.

"Confirming phone conversation with Mr. Jayne.

"This order accepted and will be shipped.

"Willapa Lumber Co.

"By Jayne.

"Our Order #1400.

"Sign and return to us at Portland."

2. It is the contention of the defendant, as disclosed in its answer and in the argument upon this appeal, that the true contract between the parties is to be found in the two letters and the foregoing order. Neither fraud nor mistake is alleged. An inspection

of the order discloses that it is, on its face, a complete contract. It does not appear that any necessary detail is omitted which should be supplied, nor is it contended by the defendant that the letters and telephone conversation supply additional details, but that they modify the terms thereof. In other words, defendant seeks, by these offers, to establish, by evidence *dehors* the contract, that prior to its execution there were negotiations wherein it was agreed that the terms of the contract, both as to quantity of material and as to time of delivery, should be different from those expressed in the instrument subsequently signed by the defendant. That this cannot be done, is so clearly taught in *Sund & Co.* v. *Flagg & Standifer Co.*, 86 Or. 289 (168 Pac. 300), that it requires no further comment. The evidence was properly excluded.

3, 4. It is then urged that error resulted from the action of the court in admitting evidence of the expense incurred by the plaintiff in purchasing lumber elsewhere, after plaintiff's failure to deliver the same. It is the settled law of this state, as conceded by the parties hereto, that the measure of damages for failure to deliver merchandise, in accordance with a contract of purchase, if the articles have a market value, is the difference between the contract price and the market value at the time and place of delivery. But there is another doctrine, equally well founded, to the effect that while the purchaser is not required to go into the market and purchase the goods elsewhere before bringing his action, he may, if he see fit, do so, and if, in a successful effort to minimize the damage, he incurs expense, he is entitled to recover such expenditures as an element of damages, so long as the total recovery does not exceed the difference between the contract price and the market price of the mer-

chandise which the defendant failed to deliver in accordance with the terms of his agreement: 8 R. C. L. 450. In the present case the trial court submitted such evidence to the jury under the following instruction:

"You are further instructed, however, that if you also find that plaintiff in this case was able to buy some or all of the lumber not delivered under the contract at less than the market value, then you are to allow the plaintiff as damages only the amount of its actual loss; that is, the difference between the contract price and the price plaintiff had to pay to replace the order; * * but in that case you must also take into consideration and compensate plaintiff for the necessary and reasonable expenses plaintiff was obliged to incur for salaries and railroad fares of employees, and telegrams and telephone charges in connection with replacing the order, as alleged in plaintiff's complaint, and not to exceed the amount stated in said complaint. But you must bear in mind that the total damages which you may allow in any event for any lumber not delivered under the contract must not exceed the difference between the contract price and the market value at the time of the breach at the place of delivery, * * nor shall such damages exceed the amount demanded in the complaint."

There was evidence submitted to the jury to the effect that the market value at the time of the breach, at the place of delivery was $75 per thousand feet, but that plaintiff purchased some of it at $61 and $66 and that the total loss to plaintiff, exclusive of his expenses, was reduced to $7,520.27, while at the market value, it would have amounted to $11,928.18. In this state of the record, it was not error to admit the evidence of which complaint is made.

It is urged that it was error to permit two of plaintiff's witnesses to testify that at the time of the alleged

breach, which according to plaintiff's contention, was August 17, 1917, airplane spruce had a market value of $105 per thousand feet; that the spruce which plaintiff purchased was not airplane spruce, but was an inferior and cheaper grade of material. The answer of the witness Duncan upon this subject was:

"The prevailing market at that time on airplane spruce was established at $105 per thousand feet, and naturally in establishing the price for airplane spruce, that had something to do in establishing the market on all spruce."

The witness Shaw testified thus:

"Q. Mr. Shaw, I will ask you if you boys had difficulty to purchase spruce?

"A. Yes, sir. On my first trip to the Harbor I took this spruce up with every mill whose manager was at home at that time, and was unable to buy any of it at any price. The answer that I got to my request for shipment of the spruce was that they could not cut it without going into their airplane stock; consequently they couldn't furnish it except at practically airplane prices.

"Q. And what were those prices?"

"A. The price at that time was $105 for airplane material."

5. Defendant moved to strike this out, as immaterial and irrelevant, which was denied. The manifest effect of this evidence went no further than to explain the prevailing high price of all grades of spruce, and therefore could have worked no harm to defendant.

6, 7. Our attention is also directed to the fact that the alleged contract upon which plaintiff stands, fixes May 30th as the final date of delivery, and it is insisted that there is a total failure of proof of any agreement to extend the time of performance, and that therefore it was error to admit evidence of the market

value of the material at any other date.   The only evidence upon this subject is that of the witness Duncan, who says that after shipments under the order should have been moving, but were not moving, he was in frequent communication with defendant in regard to the  delays and  urging  delivery, receiving promises which were not fulfilled, and finally on August 18, 1917, he received a letter from defendant notifying plaintiff  that no  more material would be delivered.   It also appears that the last delivery was made on July 9th.   While the testimony of Duncan is somewhat vague and general in its nature, when it is. taken in connection with the fact that a delivery was made on July 9th, and accepted, we are obliged to conclude that there is evidence, in the acts of the parties, of an agreement to extend the time of delivery, and the fact that a letter was written by defendant on August 17th, declining to make further deliveries was properly submitted to the jury in fixing the date of the breach.

Complaint is made that the court erred in permitting the plaintiff, upon rebuttal, to introduce evidence of three individual sales of similar lumber to other parties, in the months of April, August and December respectively, at the price of $75 per thousand feet. It is urged that this evidence was not properly evidence in rebuttal, and that the dates do not correspond with the date of the alleged breach of the contract, and that such evidence was therefore incompetent.

8, 9. An examination of the record discloses that the defendant offered evidence of individual sales over a period of time ranging from June 11th to September 1st, and the evidence referred to in the assignment of error was offered to meet the same.   It is true that the evidence was designed to prove the original cause

of action, and was not properly in rebuttal, and so the action of the court amounted to a reopening of the case for plaintiff. This is a procedure regulated by the sound discretion of the trial court, and not reviewable here in the absence of manifest abuse, which we do not discover. The evidence upon the subject of market value was allowed to take a wide range upon the part of both litigants, but throughout the entire trial the value at the date of the breach was emphasized, so that we think the jury was not misled thereby. Indeed, the verdict is for a sum slightly less than the amount which witnesses for plaintiff testified was actually paid for the material in replacing the order in August.

It is also contended that the court erred in permitting the plaintiff, during the trial, to amend its complaint by adding thereto a demand for interest, and submitting to the jury the question of interest. This question is settled beyond further discussion in this state, in favor of defendant's position. The subject is very fully discussed in *Sargent* v. *American Bank & Trust Co.*, 80 Or. 16, 42 (154 Pac. 759, 156 Pac. 431).

Our attention is called to what defendant insists is an erroneous instruction given by the court as follows:

"Now, the first question for you to determine is whether or not there was a breach of the alleged agreement between the parties. If you find that there was a breach, then the next question for you to determine would be the amount which you would allow, if any, would be such as you would agree upon according to the evidence introduced in this case.

"Now, it will be impossible for you to arrive at the amount, if you have occasion to estimate it, with mathematical accuracy. Simply do the best you can, according to all the evidence that has been introduced, and allow some sum, anywhere from one cent up to the

full amount claimed by the plaintiff, if you allow anything.''

· Defendant argues that it assumes that there is a contract to be breached, and that this is one of the crucial questions in the case.   This contention is disposed of already, in the consideration of defendant's offer of evidence relating to negotiations prior to signing the order upon which plaintiff relies.

11. It is also urged that this instruction permits the jury to indulge in speculation in reaching the verdict, but in directing the jury to do the best they can, ''according to all the evidence that has been introduced,'' the charge clearly limits their consideration to the evidence submitted and is not vulnerable to the criticism aimed thereat.

The error in submitting the allowance of interest to the consideration of the jury, is simplified by the fact that the verdict segregates the interest, fixing it in the sum of $185.   The judgment will therefore be modified by eliminating the sum of $185, awarded as interest, and the judgment is otherwise affirmed.

MODIFIED.

McBride, C. J., and Burnett and Harris, JJ., concur.

---

Denied September 9, 1919.

PETITION FOR REHEARING.

(183 Pac. 476.)

*Messrs. Welsh & Welsh* and *Messrs. Angell & Fisher,* for the petition.

*Mr. J. G. Arnold, contra.*

BURNETT, J.—By its petition for a rehearing the defendant urges that this court was wrong in the conclusion that having answered to the merits of the controversy between the parties and gone to trial on the issues so raised after having been defeated on the trial of its plea in abatement, the latter defense was waived. Section 74, L. O. L., as amended by Chapter 99, Laws of 1911, and as finally changed by Chapter 8, Laws of 1915, reads thus:

"The counterclaim mentioned in Section 73 must be one existing in favor of a defendant, and against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action:

"(1) A cause of action arising out of the contract or transaction set forth in the complaint, as the foundation of the plaintiff's claim.

"(2) In an action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action.

"The defendant may set forth by answer as many counterclaims as he may have, including pleas in abatement. Such defenses shall each be separately stated and shall refer to the causes of action which they are intended to answer, in such manner that they may be intelligently distinguished; *provided,* that the defendant shall not be required to admit in his answer any liability or indebtedness to the plaintiff in order to be permitted to plead a counterclaim."

The defendant relies upon the clause,

"The defendant may set forth by answer as many counterclaims as he may have, including pleas in abatement."

It maintains that this is a warrant for joining in one answer all manner of pleas and defenses and concludes that in no case can waiver of any plea be predicated on such joinder.

12. Conceding that the legislature made a new rule of pleading as to the matters that may be set forth in an answer, it did not undertake to construe the legal effect of what any defendant should put into that pleading. The statute does not dispense with the common-sense rule that the different defenses must not be inconsistent with each other and particularly that where a defendant by his answer first denies a thing and then further on in the pleading admits the same thing, the admission will control and the denial will be disregarded: *Veasey* v. *Humphreys,* 27 Or. 515 (41 Pac. 8); *Maxwell* v. *Bolles,* 28 Or. 1 (41 Pac. 661); *Brown* v. *Feldwert,* 46 Or. 363 (80 Pac. 414); *Dutro* v. *Ladd,* 50 Or. 120 (91 Pac. 459); *Johnson* v. *Sheridan Lumber Co.,* 51 Or. 35 (93 Pac. 470); *Peters* v. *Queen City Ins. Co.,* 63 Or. 382 (126 Pac. 1005).

In the instant case the effect of the defendant's pleading is for it to say in one breath, "the court has not acquired jurisdiction of my person," and in the other to declare, "the court has jurisdiction of my person, seeing that I am here voluntarily defending on the merits of the case." The defendant was either in court or it was not in court. Both could not be true at the same time and the admission to be drawn as a legal conclusion from its general answer that it is in court must prevail over its contention in the plea in abatement that it is not in court.

13–15. Jurisdiction is of the person and of the subject matter. The matter means the authority of the court to hear and determine the kind of case presented and is conferred by law independent of the act or consent of the parties. The lack of this element of jurisdiction is never waived but may be urged at any time during the progress of the litigation: Section 72, L. O. L., and authorities cited in note. On the other

hand, jurisdiction of a person *sui juris* depends either upon proper service of summons upon him or upon his voluntary appearance in court. Indeed, his appearance may be a special one limited to a particular purpose but if he appears and offers contest on the merits of the complaint it is universally held to be a general appearance giving the court sanction to hear and determine all the matters in controversy, providing of course that the court has authority in law over the kind of case presented.

In substance, plainly stated, the defendant's position as disclosed by its pleading is that it is in court by its own consent, but was not brought in by service of summons. Being in court generally of its own volition is an admission of the court's jurisdiction over its person which must prevail over its denial of jurisdiction embodied in its plea in abatement.

The petition for rehearing is denied.

MODIFIED. REHEARING DENIED.

McBride, C. J., and Benson and Harris, JJ., concur.