Argued and submitted November 2, 1982, reversed in part and remanded to trial court
August 16, 1983

McGINNIS,
*Respondent on Review,*

*v.*

WENTWORTH CHEVROLET CO.,
*Petitioner on Review,*

(TC A7903-01192, CA A21447, SC 28834)

668 P2d 365

Peter C. Richter, Portland, argued the cause for petitioner on review. With him on the petition and brief were Randee G. Fenner, and Miller, Nash, Yerke, Wiener and Hager, Portland.

Michael J. Hansen, Salem, argued the cause for respondent on review. With him on the briefs were Gatti & Gatti, P.C., and Thorbeck and Hansen, Salem.

CARSON, J.

### CARSON, J.

The question presented is the scope of damages recoverable by a disappointed automobile buyer upon her justifiable revocation of acceptance.

On July 25, 1978, Plaintiff purchased a new 1978 Chevrolet El Camino automobile from Defendant.[1] The purchase price was $5,923. Almost immediately after taking possession, Plaintiff began to discover problems with the automobile, ranging from cosmetic defects such as chipping paint and scratches to major mechanical problems such as a tendency for the engine to stall at intersections. Plaintiff returned the automobile to Defendant for repairs several times during the first three months of ownership with varying degrees of success.

After more than three months of problems, Plaintiff's attorney wrote Defendant revoking acceptance of the automobile and requesting either return of the purchase price or the exchange of a substitute 1978 El Camino. Instead of accepting the demand, Defendant attempted one more time to effect the requested repairs, but was unable to do so satisfactorily. Plaintiff then, through her attorney, on January 26, 1979, reiterated her revocation and wrote that she would store the automobile, rent a substitute and hold Defendant accountable for the costs incurred.

Defendant refused to recognize Plaintiff's revocation, and, on March 7, 1979, Plaintiff filed this action. In parts pertinent to the issue presented to this court,[2] Plaintiff's complaint alleged a right to revocation of acceptance and sought return of the purchase price plus "* * * incidental and consequential damages as follows: 1. Automobile storage fees * * * 2. Car rental fees and other incidental damages * * * [and] 3. Loan fees and interest charges."

---

[1] The automobile actually was purchased from Defendant's predecessor in interest, Ed Randall Chevrolet Co. Plaintiff's Second Amended Complaint added General Motors Corporation (GMC) as a defendant (incorrectly denominated therein as "Third-Party Defendant", ORCP 22 and 28). The trial court found against Plaintiff on her breach of warranty claim against GMC, and, because Plaintiff did not appeal from that judgment, the Court of Appeals dismissed Plaintiff's appeal as to GMC. Reference in this opinion to "Defendant" includes only Wentworth Chevrolet Co.

[2] Plaintiff's complaint also alleged a claim against Defendant under the Unlawful Trade Practices Act, ORS 646.605 et seq. The trial court found against Plaintiff on this claim and she did not pursue it on appeal.

Subsequently, upon trial before the court, Defendant for the first time raised the defense that recovery for these damages might be precluded by a limitation-of-liability clause set forth in the purchase contract.[3] Initially, the trial court reserved judgment on the issue of the scope of damages and limited testimony to the question of whether Plaintiff was entitled to revoke acceptance.

At the close of testimony, the trial court concluded that the automobile was a "lemon" and that, in the circumstances, Plaintiff's revocation of acceptance was justifiable. It thereupon ruled that Plaintiff was entitled to a refund of the purchase price, less the value of her use of the automobile (which the court set at $1,000). Plaintiff renewed her request for the additional damages pleaded in her complaint, but the trial court denied the request, evidently concluding that in a revocation-of-acceptance case a plaintiff's remedy is limited to a refund of the purchase price.[4] The trial court did not rule on the effect of the contract's limitation-of-liability clause.

Plaintiff appealed, contending that the trial court erred in refusing to consider her request for incidental and consequential damages. Defendant did not cross-appeal. The Court of Appeals held that Plaintiff was entitled to damages for storage, insurance, and the renting of a substitute automobile (as incident to "cover"), reversed the trial court, and

---

[3] That clause provides that Defendant, as seller, "* * * shall not be liable in contract, tort or otherwise for injuries to persons or property or *for consequential damages* or commercial losses." (Emphasis added.)

[4] Some of the participants in this case have used the word "rescission" as a synonym for "revocation of acceptance". This is an incorrect usage. *See* Uniform Commercial Code § 2-608, Comment 1; White & Summers, Uniform Commercial Code § 8-1 at 248 (1972). Although the UCC drafters explicitly preserved a buyer's right to seek rescission under appropriate circumstances (*see* UCC §§ 1-103 and 2-721), their intent clearly was that the revocation-of-acceptance remedy is not to be construed as equivalent to rescission. As discussed *infra,* ORS 72.7110 sets out in detail a buyer's rights upon justifiable revocation of acceptance. In addition to outlining the buyer's entitlement to various damages resulting from the breach, the statute also provides that "the buyer may cancel." "Cancellation" is defined in ORS 72.1060(4):

> " 'Cancellation' occurs when either party puts an end to the contract for breach by the other and its effect is the same as that of 'termination' except that the canceling party also retains any remedy for breach of the whole contract or any unperformed balance."

Revocation of acceptance, in contrast to recision, is wholly a statutory remedy specifically defined and limited by the legislature.

remanded the case to the trial court for determination of the amount of these damages. Defendant petitioned this court claiming error only in that part of the Court of Appeals decision granting damages to Plaintiff for rental costs as "cover". Thus, the issue before us is whether, given Plaintiff's justifiable revocation of her acceptance of the automobile, she is entitled to recompense for her automobile rental fees.

Resolution of this case is governed by the sales provisions of the Uniform Commercial Code (UCC) as adopted in this state, ORS 72.1010 *et seq.* ORS 72.6080 defines the circumstances in which a buyer is entitled to revoke acceptance of goods purchased[5] and then provides:

> "(3)  A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."

Plaintiff's entitlement to damages, accordingly, is to be determined by reference to the UCC provisions governing a buyer's remedies upon rightful revocation of acceptance or rejection of nonconforming goods. The appropriate statute is ORS 72.7110:

> "(1)  Where * * * the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved * * * the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid:

> "(a)  'Cover' and have damages under ORS 72.7120 as to all the goods affected whether or not they have been identified to the contract; or

---

[5] ORS 72.6080 provides:

"(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:

"(a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

"(b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

"(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

"* * * * *"

"(b)   Recover damages for nondelivery as provided in ORS 72.7130.

"* * * * *

"(3)   On rightful rejection or justifiable revocation of acceptance a buyer has a security interest in goods in his possession or control for any payments made on their price and any expenses reasonably incurred in their inspection, receipt, transportation, care and custody and may hold such goods and resell them in like manner as an aggrieved seller as provided in ORS 72.7060."

Thus, a buyer in Plaintiff's position is not relegated merely to cancellation of the contract and recovery of the price paid thereunder (as apparently held by the trial court); rather, she also potentially is entitled to a catalog of other remedies, one of which is "cover".

ORS 72.7120 provides:

"(1)   After a breach within ORS 72.7110 the buyer may 'cover' by making in good faith and without unreasonable delay *any reasonable purchase of* or contract to purchase *goods in substitution* for those due from the seller.

"(2)   The buyer may recover from the seller as damages the difference between the cost of cover and the contract price together with any *incidental or consequential damages* as defined in ORS 72.7150, but less expenses saved in consequence of the seller's breach.

"(3)   Failure of the buyer to effect cover within this section does not bar him from any other remedy." (Emphasis added.)

In an appropriate case, where a buyer does not "cover", she or he may recover damages for non-delivery.[6]

ORS 72.7130 provides:

"(1)   Subject to the provisions of ORS 72.7230 with respect to proof of market price, the measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned

---

[6] Although the reference in the statute is to "non-delivery" or "repudiation" by the seller, the drafters of the UCC apparently intended that this damage remedy be available to a buyer who "rejects" or "revokes acceptance", as well. ORS 72.7110(1), 72.7130(2); Nordstrom, Handbook of the Law of Sales § 149 at 449-50 (1970).

of the breach and the contract price together with any incidental or consequential damages provided in ORS 72.7150, but less expenses saved in consequence of the seller's breach.

"(2)    Market price is to be determined as of the place for tender or, in case of rejection after arrival or revocation of acceptance, as of the place of arrival."

■    In summary, a buyer who justifiably revokes acceptance of nonconforming goods purchased from a seller is entitled under the UCC to the following remedies:

1.    The right to "cancel" the contract; and

2.    Recovery of so much of the price as has been paid (including a security interest in goods in her possession and certain expenses incurred incident thereto); and

3.    "Cover" damages; or

4.    "Nondelivery" damages; and

5.    "Incidental" and "consequential" damages under either "3." or "4." above.

The question presented is whether Plaintiff's claim for rental recompense falls within one of the classes outlined above. The Court of Appeals concluded that the renting of a replacement automobile was a reasonable way for Plaintiff to cover and thus the rental costs, as a cost in effecting cover, were recoverable as "incidental" damages under ORS 72.7150(1). *McGinnis v. Wentworth Chevrolet Co.,* 57 Or App 443, 448, 645 P2d 543 (1982). Defendant, to the contrary, contends that these costs, if anything, are "consequential damages" (ORS 72.7150(2)) and are subject to the contract's liability exclusion.

The Court of Appeals' opinion evinces a misconception as to the purpose and function of the UCC's "cover" remedy. Where a seller breaches a contract for the sale of goods by failing to deliver the agreed-upon goods, the buyer's traditional pre-code contract remedy was to seek "loss-of-bargain" damages. The measure of damages was calculated as the difference between the contract price and the fair market value of the goods. *See Philippi v. Pacific Grains, Inc.,* 225 Or 57, 60, 356 P2d 438 (1960); *Duncan Lumber Co. v. Willapa Lumber Co.,* 93 Or 386, 396, 182 P 172, 183 P 476 (1919); *Stillwell v. Hill,* 87 Or 112, 122-23, 169 P 1174 (1918). This traditional remedy is reflected in the UCC's "market price" formula found in ORS 72.7130.

The UCC's "cover" alternative was intended to enable the buyer to "obtain the goods he needs" by allowing the disappointed buyer to reenter the market place and make a reasonable purchase of substitute goods. *See* UCC § 2-712, Comment 1. This remedy also can obviate the often difficult calculation of the market price of the goods. *See generally* White and Summers, Uniform Commercial Code §§ 6-3, 6-4 (1972). When a buyer makes a reasonable "cover", the measure of damages is the difference between the actual "cover" purchased and the contract price. ORS 72.7120(2). This formula results in a substantial departure from pre-code law where there was no assurance at what time or place the court would measure the market were the buyer to purchase substitute goods. *See* White and Summers, *supra* at § 6-3. Although ORS 72.7120(3) makes it clear that the buyer is not obligated to "cover" (except insofar as she needs to mitigate her consequential damages, *see* UCC § 1-712, Comment 3), if the buyer does not "cover", her loss-of-bargain damages, if any, will be computed under ORS 72.7130, the market price provision. *See* 2 Anderson on the Uniform Commercial Code § 2-712:4 at 432 (2nd ed 1971).

We now focus on the question of whether the renting of a substitute automobile can be "cover" in these circumstances. ORS 72.7120(1) only describes "cover" as "any reasonable purchase of or contract to purchase goods in substitution for those due from the seller." A clear example of "cover" would be if Plaintiff had purchased another 1978 El Camino or even a comparable automobile from another dealer. Although it has been stated that UCC § 2-712 is "unambiguous" in its application to only those cases where the buyer actually *buys* substitute goods, *see Draper v. Minneapolis-Moline, Inc.,* 100 Ill App 324, 241 NE2d 342, 345 (1968), the official commentary to UCC § 2-712 is not clear on whether the term "purchase" can include rentals. The general definition of "purchase" in ORS 71.2010(32) is likewise unhelpful.[7]

Given the "cover" remedy's purpose in providing certainty for the calculation of the buyer's loss-of-bargain, while

---

[7] ORS 71.2010(32) provides:

" 'Purchase' includes taking by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift or any other voluntary transaction creating an interest in property."

also allowing the buyer to obtain the needed goods, we conclude that the UCC's "cover" remedy generally is not intended to apply to a rental. Rather, the remedy is limited only to those situations where the buyer has purchased or contracted to purchase goods as an actual replacement for the agreed-upon goods. *See* 3 Williston on Sales § 25-11, 453 (4th ed 1974); *Draper v. Minneapolis-Moline, Inc., supra,* 241 NE2d at 345. Rental costs are not readily translatable into a comparable value figure for computation of the loss-of-bargain and, therefore, viewing temporary rentals as "cover" would defeat the remedy's intended purpose.[8] As the rental automobile did not constitute a "cover" in the circumstances, the Court of Appeals erred in awarding Plaintiff her rental fees as a cost "incidental" to "cover".

■    This does not end our inquiry, however. As stated above, where a buyer does not purchase substitute goods, her loss-of-bargain must be computed through the "market price" formula[9] and any additional losses resulting from the seller's breach, including rental costs, are to be analyzed under the incidental and consequential damages provision.[10] ORS 72.7130(1); ORS 72.7150.

Incidental and consequential damages are defined in ORS 72.7150:

"(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection,

---

[8] In this case, the nonconforming automobile was purchased for about $6000 and the record indicates that Plaintiff intended to introduce evidence that her rental costs were $150/month. It is at once apparent that there is no simple way the former figure can be compared to the latter figure to arrive at a loss-of-bargain sum. The formula in ORS 72.7120(2) is that the "cover" damages are "* * * the difference between the cost of cover and the contract price," and it is accordingly implicit in the remedy that the relevant figures are susceptible to meaningful "difference".

[9] The argument that Plaintiff's rental costs should be recoverable as "cover" is based in part on the contention that because the nonconforming automobile was an expensive purchase and Defendant refused timely to refund the purchase price upon her justifiable revocation, she was financially unable to effect a "cover" by repurchase and was relegated to renting. Plaintiff has available the "market price" alternative and thus only the fact of her failure to effect "cover", and not the reasons for her failure, is relevant at this point.

[10] We have assumed, in the absence of any challenge to the sufficiency of her complaint, that Plaintiff's pleadings adequately invoked the market price remedy under ORS 72.7130 and thus also triggered her right to incidental and consequential damages.

receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

"(2)  Consequential damages resulting from the seller's breach include:

"(a)  Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

"(b)  Injury to person or property proximately resulting from any breach of warranty."

Whether a particular item of alleged damage is recoverable as incidental or consequential generally is not important provided that it is recoverable as either. In this case, however, the distinction may be significant because of the contract's exclusion clause which precludes "consequential damages".[11]

The list of "incidental damages" in ORS 72.7150(1) is "not intended to be exhaustive but [is] merely illustrative of the typical kinds of incidental damage." UCC § 2-715, Comment 1. The list and the employment of the term "incidental", however, connote a narrow ambit restricted to those costs and expenses incurred by the buyer which directly result from the fact of the breach. The dichotomy with the word "consequential" admittedly is vague. *See* White & Summers, *supra* at § 10-3; 2 Anderson, *supra* at 2-715:15.

■      Nonetheless, we conclude that Plaintiff's rental expenses are not incidental damages.[12] They relate to the particular circumstances of Plaintiff relative to the goods, rather than being necessarily incident to a breach of this contract. *See* UCC § 2-715, Comments. Whether these expenses are recoverable as consequential damages under ORS 72.7150(2), and the effect, if any, of the contract's limitation-of-liability clause however, must be determined on remand.

---

[11] Because of the manner in which the trial court disposed of Plaintiff's request for the additional damages, it did not address the question of whether the contract's exclusion clause is valid and effectively bars her recovery of the consequential damages sought. We express no opinion as to that issue and reserve it for remand.

[12] *Accord: Lidstrand v. Silvercrest Industries,* 28 Wash App 359, 623 P2d 710, 715 (1981) (buyers of defective mobile home entitled to recover rental cost of alternative housing as consequential damages); 2 Anderson, *supra* at 2-715:30.

In conclusion, that part of the opinion of the Court of Appeals granting Plaintiff recompense for her automobile rental costs as an expense incidental to "cover" is reversed. This case is remanded to the trial court for further proceedings in accordance with this opinion and that part of the Court of Appeals opinion which was not challenged on appeal.

Reversed and remanded.