CLAXTON,
*Respondent - Cross-Appellant,*
*and*

CLAXTON,
*Respondent,*

*v.*

BOOTHE,
*Appellant - Cross-Respondent.*

(8808-04145; CA A60317)

790 P2d 1201

Ferris F. Boothe, Portland, filed the brief *pro se* for appellant - cross-respondent, trustee. With him on the briefs was Thomas S. Boothe, Portland, for appellant - cross-respondent, individually.

J. Jay Carroll, Yakima, Washington, argued the cause for respondents and cross-appellant Tom Claxton. With him on the brief were Blaine L. Tamaki and Velikanje, Moore & Shore, Inc., P.S., Yakima, Washington, and Scott A. Jonsson and Schwabe, Williamson & Wyatt, Portland.

Before Joseph, Chief Judge, and Riggs and Edmonds, Judges.

## EDMONDS, J.

Defendant Boothe appeals from a judgment awarded to Tom Claxton (plaintiff), after the trial court granted a summary judgment for plaintiff on the issue of liability. He argues that the trial court erred, because there are issues of fact regarding liability.[1] We review the evidence in the light most favorable to defendant and reverse.[2]

Defendant is the court appointed trustee for creditors of Howard Watrous. In that capacity, he took possession of some Arabian horses and offered them for sale. In February, 1986, plaintiff purchased two mares, three foals and one mare who was carrying a foal for $6,000. The purchase agreement identified the horses as "purebred mares, with their foals as named: Heavenly Galaxy and foal, Geba Sue and foal, G.C. Dreamy and foal." It further provided:

> "Ferris Boothe guarantees to provide the certificate of registration for the six purebred Arabians mentioned above as soon as cleared by the Arabian Horse Registry or the monies paid will be refunded. The unborn foal of Geba Sue will also be provided with registration."

In the summary judgment proceeding, plaintiff asserted that he had purchased the horses for the purpose of breeding them and selling their offspring. One of defendant's witnesses stated that plaintiff had said that he did not care about two of the foals but was interested in registering the other.

At the time of sale, defendant was not able to provide registration papers for the horses. In March, 1986, defendant wrote to plaintiff, advising him of potential problems in the registration and offering to rescind the contract unless plaintiff was willing to accept the horses with knowledge of the registration problems. Plaintiff never responded. In July, 1986, plaintiff advised defendant that he wanted to rescind the transaction and that he wanted a full refund, plus incidental

---

[1] Reggie Claxton's claims were dismissed, as were plaintiff's claims against Gloria Brewer and the Arabian Horse Registry of America. Although Reggie Claxton is named as an adverse party in the notice of appeal, no assignment of error relates to him; we therefore affirm the judgment as to him. In the light of our disposition of the case, we do not address defendant's other assignment of error.

[2] Plaintiffs' cross-appeal is rendered moot by our disposition of defendant's appeal. Accordingly, we do not address their assignment of error and affirm on the cross-appeal.

expenses. Defendant refused and assured plaintiff that registration of the horses was forthcoming. Later, the two mares originally identified as G.C. Dreamy and Heavenly Galaxy were identified as Dollette and Heavenly Polianna.

Plaintiff filed this action for rescission and moved for summary judgment on the basis that he had justifiably revoked his acceptance of the horses, pursuant to ORS 72.6080. Defendant filed affidavits stating that all horses sold were purebred Arabians and that each was registerable. Plaintiff argues that there were two non-conformities that justified revocation: (1) The horses were not registerable within a reasonable time; and (2) the horses delivered were not the horses named in the agreement.

A contract for the sale of horses is a transaction in goods governed by the Uniform Commercial Code. ORS 72.1020; ORS 72.1050. We treat plaintiff's rescission claim as an attempted revocation of acceptance under ORS 72.6080. *See McGinnis v. Wentworth Chevrolet Co.*, 295 Or 494, 497 n 4, 668 P2d 365 (1983). ORS 72.6080 provides:

"(1)  The buyer may revoke acceptance of a lot or commercial unit *whose nonconformity substantially impairs its value to the buyer* if the buyer has accepted it:

"(a)  On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

"(b) Without discovery of such nonconformity if the acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

"(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

"(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if the buyer had rejected them." (Emphasis supplied.)

Defendant argues that the trial court erred in granting summary judgment, because whether the identification error and the delay in providing registration "substantially impaired" the horses' value to plaintiff is a genuine issue of material fact. ORCP 47C.

In *Jorgensen v. Pressnall,* 274 Or 285, 289-90, 545 P2d 1382 (1976), the court said:

"Whether the plaintiffs proved nonconformities sufficiently serious to justify revocation of acceptance is a two-step inquiry under the code. Since ORS 72.6080(1) provides that the buyer may revoke acceptance of goods 'whose nonconformity substantially impairs its value to him' the value of conforming goods to the plaintiff must first be determined. This is a subjective question in the sense that it calls for a consideration of the needs and circumstances of the plaintiff who seeks to revoke; not the needs and circumstances of an average buyer. The second inquiry is whether the nonconformity in fact substantially impairs the value of the goods to the buyer, having in mind his particular needs. This is an objective question in the sense that it calls for evidence of something more than plaintiff's assertion that the nonconformity impaired the value to him; it requires evidence from which it can be inferred that plaintiff's needs were not met because of the nonconformity. In short, the nonconformity must substantially impair the value of the goods to the plaintiff buyer. The existence of substantial impairment depends upon the facts and circumstances in each case." (Footnotes omitted; emphasis omitted.)

We read *Jorgensen* to say that, in order to prevail under ORS 72.6080, plaintiff must prove a nonconformity and a substantial impairment of value. In order for a summary judgment to be appropriate, there must be no genuine issue of material fact regarding either requirement. The purchase agreement provides that plaintiff will receive a "certificate of registration for the six purebred Arabians * * * as soon as cleared by the Arabian Horse Registry." The assertion by defendant that registration is available suffices to raise an issue of fact as to whether there was a nonconformity. Defendant's evidence that the mares that were delivered to plaintiff were registerable with the Arabian Horse Registry and were of comparable blood lines creates an issue of fact as to whether there was a substantial impairment of value. That question could not be resolved by a summary judgment.

Reversed and remanded on appeal as to respondent Tom Claxton and affirmed as to respondent Reggie Claxton; affirmed on cross-appeal.