Argued January 14, reversed and dismissed March 2, rehearing
denied May 11, 1920.

# WILLIAMS *v.* SEUFERT BROS. CO.*

(188 Pac. 165; 189 Pac. 636.)

**Appearance—Answer on the Merits General Appearance, Though
Reserving Right of Special Appearance to Object to Jurisdiction.**

1. Answer on the merits, though made after special appearance,
and reserving right to object to jurisdiction, is nevertheless a general appearance.

**Fish—State has Power to Regulate Fisheries.**

2. Within the limits prescribed by the Constitution, the state in
the exercise of its police power and for the welfare of all its citizens can regulate catching of fish in the waters of the state, or
those over which the States of Oregon and Washington have concurrent jurisdiction.

[As to the right to fish in navigable river, see notes in 21
Ann. Cas. 777; 131 Am. St. Rep. 758.]

**Fish—Statutory Requirement That Location License must be Renewed as Early as April 1st is Reasonable.**

3. The requirement of Laws of 1915, page 226, Section 2, that
one holding a license to fish with a fixed appliance shall at some
date, as early as April 1st of any year, make application for renewal in order to retain the location is a reasonable one.

[As to the validity and construction of statute regulating
the method of taking fish, see note in Ann. Cas. 1917D, 814.]

**Fish—Failure to Renew in Time License for Location for Fixed
Appliance in Columbia River is an Abandonment of the Location.**

4. Under Laws of 1913, page 225, Section 1, forbidding issuance
of license for a location in Columbia River for fishing with a fixed
appliance which would interfere with a prior location, and Laws
of 1915, page 226, Section 2, making the failure to renew a license
for location for fixed appliance by April 1st of any year an abandonment of the location, the failure to renew a license is an
abandonment of the location to another who had license issued for
the same location on April 1st, regardless of any prior use of such
location.

## ON PETITION FOR REHEARING.

**Fish—Decision of Fish and Game Commissioner will not be Reversed by Courts Where Facts Warrant the Action Taken.**

5. A decision of the fish and game commissioner deciding question of priority as to fishing rights will not, in view of the obvious

---

*On government control over rights of fisheries generally, see
note in 39 L. R. A. 582.    REPORTER.

intention of the legislature to invest the commission with discretionary power, be disturbed where the facts and circumstances warranted the determination made.

From Multnomah: GEORGE N. DAVIS, Judge.

Department 2.

In August, 1916, plaintiff, Williams, instituted this suit in Multnomah County to enjoin the defendant, Seufert Brothers Company, from the operation of fishing tackle and the occupancy of the location of a scow fish-wheel at a certain point in the Columbia River; for restraining and advisory orders directed to the master fish warden respecting duplicate licenses; and orders to the state board of fish and game commissioners to compel recognition of Williams' priority right. Defendants appeal from a decree rendered in favor of plaintiff.

It is alleged in the complaint:

"That plaintiff is now and at all the times hereinafter mentioned has been, a citizen of the United States of America * * and for more than ten years last past a citizen and an actual *bona fide* resident of the State of Oregon.

"That defendant, Seufert Brothers Company, is now and during the period complained of has been, a corporation duly organized under and by virtue of the Oregon laws, and, under its charter empowered to take fish from the waters of the Columbia River and to pack the same for commercial purposes and to operate gear and tackle in taking fish from the waters of the Columbia River.

"That defendant, R. E. Clanton, is the duly appointed and qualified and acting master fish warden of the State of Oregon, and as such, is invested with the duty of issuing licenses to fish and to operate fishing gear and tackle, and scow fish wheels in the waters of the Columbia River within the jurisdiction of the State of Oregon.

"That defendants, James Withycombe, C. F. Stone, I. N. Fleishner, F. M. Warren and Marion

Jack comprise the board of fish and game commissioners of the State of Oregon, and as such commissioners are by law invested with the power and duty of supervision over the acts and official duties of the master fish warden, and are by law charged with the duty of supervising and regulating the issuance of fishing licenses as provided by the laws of the State of Oregon.''

It is further alleged in substance:

That during the fishing season for many years past plaintiff has been accustomed to fish for salmon and other food fish on the south bank of the Columbia River for food for his family and commercial purposes, and—

''Particularly has plaintiff fished on or about a certain point more particularly described as a point situated 28.53 chains north and 12 chains west of the quarter-section corner between section one and section thirty-six in townships one and two respectively, both north of range 13 east of Willamette Meridian, in Wasco County, Oregon.''

That during the different years from 1910 until 1914 licenses were regularly issued to the plaintiff and to plaintiff and his partner to fish at the point mentioned; that the defendant Seufert Brothers Company in May, 1913, opposed the operation of plaintiff's scow fish-wheel at the point described, and alleges that the defendant company through its agents unloosened the lashings and cables holding the scow fish-wheel in position.

That on the 1st of April, 1914, there was issued to the plaintiff by the master fish warden certain license ''0–26'' authorizing plaintiff to operate his scow fish-wheel at the point described, and that the defendant company again unloosened plaintiff's scow; that in August, 1914, defendant company unlawfully occupied the point in question with a scow

fish-wheel bearing license number "0–1" and made fast the same at the point described, said point being the identical point belonging to plaintiff for fishing purposes under his license and prior rights, and operated said scow fish-wheel to the exclusion of plaintiff. In March, 1915, plaintiff applied to the master fish warden for a license for the season 1915–16, but that defendant company objected to and prevented the issuance of such license until the season was too far advanced for profitable fishing. Plaintiff applied for and was issued a license by the master fish warden dated May 5, 1916, numbered "0–31" purporting to authorize plaintiff to operate a scow fish-wheel at the point described, and alleges on information and belief that defendant, Seufert Brothers Company, had been granted a license by the master fish warden covering the identical point in question for the season of 1916–17. Defendant, Seufert Brothers Company, claims the exclusive right of fishing at the said point in question to the exclusion of the plaintiff, and without reference to plaintiff's prior rights earned during the past years. That said point does not permit of the operation of two scow fish-wheels without interference; that the claimed rights of the defendant company were acquired subsequently and are inferior to the superior rights of plaintiff; that the defendant company operated no scow fish-wheel prior to the year 1913, nor claimed any right to fishing at the point in question; that defendant company on August 14, 1916, moved a scow fish-wheel to the point, at which time plaintiff was in the act of proceeding to said point with his scow fish-wheel under his license and thereby excluded plaintiff from said point. It is further alleged by plaintiff:

"That during the month of April, 1915, without any color of right, defendant Seufert Brothers Company erected along the river bank at said point a stone and concrete wall about 42 feet in length and 3 feet in thickness and of a varying height of from one to five feet; that said wall was designed to prevent and does prevent the proper operation of plaintiff's scow fish-wheel, and was designed to be and is an obstruction to the fishing rights of plaintiff at the point hereinbefore described."

That the plaintiff had submitted the matter to the master fish warden and the board of fish and game commissioners, but that after investigation the board had failed to protect plaintiff's prior rights of fishing, but had instructed the master fish warden to issue duplicate licenses to defendant and to plaintiff. Plaintiff also asks an accounting by the defendant company of all profits derived from its taking fish from the point in question since the 14th of August, 1916.

Upon the service of the summons the defendant, Seufert Brothers Company, appeared especially for the purpose of objecting to the jurisdiction of the court, upon the grounds that the suit had been brought in the wrong court; that the defendant company is not a resident of Multnomah County and is the only real defendant in the cause; that the suit is in relation to title and interest in real property, to wit, the point in question, and moved for a dismissal of the suit and the quashing of the summons; and filed an affidavit showing the following facts: Its principal place of business was in Wasco County. It claims to be the owner of said point, and entitled to the possession of the same by reason of being the owner of the land abutting upon the river and the meander line of the river at that point; that the point in question is above the ordi-

nary line of high water on the river and belongs to
the abutting land. The plaintiff claims that the
point does not belong to the defendant company, but
to the State of Oregon; that the defendant company
constructed the wall described in the complaint for.
the purpose of using the same in connection with
the shore, and claims the right to do so; that the
other defendants in this case are not proper parties
defendant, and are not interested in the controversy
in any way; and that they were joined in this pro-
ceeding for the sole purpose of giving the court an
appearance of jurisdiction. Thereafter the court
overruled the motion of the defendant company.

Afterward defendant, Seufert Brothers Company,
not admitting the jurisdiction of the court but in-
sisting upon its objection that the court had no
jurisdiction, filed an answer by way of abatement,
and asking for the dismissal of this proceeding for
want of jurisdiction and on account of the venue
being improperly laid, and formally alleging in sub-
stance, the facts stated in the affidavit above men-
tioned, and pleaded for a dismissal of the cause. For
further and separate answer the defendant company,
not waiving its opposition to the jurisdiction of the
court, denied many of the allegations of the com-
plaint, and for an affirmative answer alleged that it
was the owner of a large tract of land lying along
the Columbia River immediately back of the point
in question, and calling for boundaries running to
the river; that the point in dispute is a part of a
small portion of high land lying between the meander
line, as surveyed by the government, and the actual
shore of the river; and that the defendant, as the
grantee of the government for said abutting land,
also became the owner of said small portion of land

lying between the meander line and the river, including the point in question.

Defendant further averred that at divers times in 1913 and 1914, the plaintiff went upon the lands of defendant and fastened thereon and on the bank and bluff of the river far above the line of ordinary high water certain ropes and cables, thereby trespassing upon the lands owned by and in the possession of the defendant and inclosed by its fences together with natural fences, and attempted to assert a permanent claim to the right and occupation of the land; that about the year 1914, this defendant procured a license to fish at the particular point in question, and constructed a concrete wall thereon for the purpose of enabling him to safely attach a scow fish-wheel; that the company ever since has been the holder of a license from the proper authorities to fish with a scow fish-wheel at that point; and that during the years from 1910 up to the present time the plaintiff has fished at different times with his scow fish-wheel at different points up and down the Columbia River and on both sides thereof, but has never obtained any right to fish at this particular point.

Thereafter the defendant company moved for a change of venue to Wasco County, Oregon, which motion was overruled by the court.

Plaintiff replied, putting in issue many of the affirmative allegations of the answer. The defendants R. E. Clanton, master fish warden, and James Withycombe, C. F. Stone, I. N. Fleischner, F. M. Warren and Marion Jack, members of the fish and game commission, filed a demurrer to plaintiff's complaint, upon the grounds: First, that the court has no jurisdiction of the subject of the suit. Sec-

ond, that the complaint does not state facts suffi-
cient to constitute a suit against these defendants.

After the taking of testimony the Circuit Court
entered an order on August 28, 1917, overruling the
demurrer of defendants R. E. Clanton et al., and
rendered a decree, restraining the defendant, Seu-
fert Brothers Company, from operating any scow
fish-wheel or other fishing appliance that in any man-
ner may interfere with the operation by the plaintiff
of his scow fish-wheel at the certain point described
in the complaint, or within the legal distance of 900
feet from that point, and enjoining the company
from asserting any claim of prior fishing rights at
said point over the rights of the plaintiff until such
future time as plaintiff shall have legally abandoned
the same or have otherwise disposed of his priority
rights of fishing, and awarding the plaintiff priority
of fishing rights and privileges at the point de-
scribed; restraining the board of fish and game com-
missioners from issuing any license to the company
to fish at the point described; and requiring the
board to adopt rules and regulations governing 'the
issuance of licenses so as to make effective the de-
cree, and to cancel the license issued to the company.

REVERSED AND SUIT DISMISSED.

For appellant, Seufert Brothers Company, there
was a brief over the names of *Mr. H. S. Wilson* and
*Mr. A. S. Bennett,* with an oral argument by *Mr.
Wilson.*

For the other appellants, there was a brief over
the names of *Mr. George M. Brown,* Attorney Gen-
eral, and *Mr. John O. Bailey,* Assistant Attorney
General, with an oral argument by *Mr. Bailey.*

For respondent there was a brief over the names
of *Mr. James G. Wilson, Mr. George B. Guthrie* and

*Mr. E. F. Bernard,* with an oral argument by *Mr. Wilson.*

BEAN, J.—1. The preliminary question as to the jurisdiction of the Circuit Court for Multnomah County should first be disposed of. It appears that the defendant R. E. Clanton, master fish warden, resides in the county of Multnomah and was there served with a summons in the cause. Two of the commissioners also resided in that county. All of the commissioners appeared generally and filed a demurrer. The defendant, Seufert Brothers Company, was served with a summons in Wasco County. After the defendant company made a special appearance and objected to the jurisdiction of the Circuit Court of Multnomah County and moved to quash the summons, and such application was denied, it answered to the merits. This answer of the defendant company, while in form still objecting to the jurisdiction of the court, invokes a determination of the rights of the respective parties, and was a general appearance. Therefore, however, we may consider the question of jurisdiction in the first instance upon the filing of the complaint and the service of the summons upon the defendants, the Circuit Court of Multnomah County acquired complete jurisdiction by the general appearance of the defendants when some of the defendants demurred, and when the defendant company answered to the merits.

This principle is tersely enunciated by Mr. Justice EAKIN in *Jones* v. *Jones,* 59 Or. 308 (117 Pac. 414). We considered a similar question in *Sweeney* v. *Jackson County,* 93 Or. 96 (178 Pac. 365, 370), where buttressed by a quotation from the opinion in the case of *Sealy* v. *California Lumber Co.,* 19 Or. 94,

97 (24 Pac. 197), we held that a party cannot invoke the jurisdiction of a court and obtain the benefit of the decree, if it is in his favor, and claim contrary to such adjudication when the result is adverse to him: See *Belknap* v. *Charlton*, 25 Or. 41 (34 Pac. 758), and *Winter* v. *Union Packing Co.,* 51 Or. 97 (93 Pac. 930).

We therefore conclude that the Circuit Court of Multnomah County had jurisdiction of the cause, in so far as the validity and efficacy of the licenses issued to the respective parties are concerned, upon which the main controversy hinges.

In order to make the question in dispute clear, we state the facts in regard to the issuance of licenses at and near the point in controversy, commencing in 1914, when Seufert Brothers Company made application to the master fish warden for and was granted a license, numbered "0–1," dated April 1, 1914, to operate a scow fish-wheel situated 28.53 chains north and 12 chains west of quarter-section corner between sections 1 and 36, Townships 1 and 2 North, Range 13 East, W. M., in the Columbia River.

On March 23, 1914, Sam Williams made application for a license "to operate a fish-wheel in the Columbia River about two miles above The Dalles on the Oregon side at a place where I have had a wheel for three or four years." The following notation is on the application: "Lots 1 & 2 Sec. 1, Tp. 1 N., R. 13, E. W. M." The license was issued and dated April 1, 1914.

May 1, 1914, Williams applied to have the location of the scow fish-wheel changed to read situated "on a point in the E. half of the S. W. ¼ of Sec. 36, Tp. 2 N., R. 13, E., W. M., on the shore line of lands owned by the State of Oregon in front of Lot 3 of said Section." The location was indorsed on the

license, and the following notation made thereon: "Location of wheel changed to conform with description hereon May 1, 1914."

May 1, 1915, Seufert Brothers Company made application for a license at the same point described in its application and license in 1914, and license "0–31" was issued to it, and dated May 28, 1915.

June 8, 1915, Williams applied to the master fish warden for a license to operate a scow fish-wheel at—

"That certain point situated 28.53 chains north and 12 chains west of the quarter-section corner between section 1 in township 1 and section 36 in township 2, both townships north of range 13 east of the Willamette Meridian, in the county of Wasco, State of Oregon, at the point where I have heretofore secured and fished under state license."

The application was rejected for the reason that license numbered "0–31" had been issued to Seufert Brothers Company on May 28, 1915, for the identical place applied for. Mr. Williams was informed by letter from the master fish warden as follows:

"At the meeting of the board of Fish and Game Commissioners at the Governor's office in Salem on May 26th, after going into the matter, it was decided that, inasmuch as license had been granted to the Seufert Brothers Company upon application submitted in 1914 describing a certain identical point, that they had no option other than to order the renewal of said license, as application had been submitted conforming with the laws regulating such matters.

"They also decided, and so instructed me, to renew the license of Sam Williams upon the renewal of application as submitted in 1914, provided that a renewal of the 1914 license is desired. Therefore, should you still desire a license for a scow fish-wheel, it will be necessary for you to make an application describing the location required as was set

forth in the application submitted for a scow fish-wheel in 1914.''

January 3, 1916, Seufert Brothers Company applied for a license for a scow fish-wheel at the same point as described in their applications and licenses for the years 1914 and 1915, and the license was issued and dated April 1, 1916.

On April 5, 1916, Sam Williams applied for a license for a scow fish-wheel, describing the location "at my accustomed place described more particularly on margin hereof:

(On margin) "Description of location: That certain portion of the rocks which at low water constitute the South bank of the Columbia river opposite Lot numbered three in Section 36, Township 2 North of Range 13, East of the Willamette Meridian being in particular a certain point situated 28.53 chains North and 12 chains West of the quarter section corner between section 1 in Township one and Section 36 in Township two, both Townships North of Range 13 East of said Willamette Meridian in Wasco county, state of Oregon.''

On May 5, 1916, a license was issued to him to operate a scow fish-wheel at the point described in the application, which is in effect identical with the location for the scow fish-wheel of Seufert Brothers Company described in their license of April 1, 1916.

The gist of the controversy in this suit is in regard to the conflicting licenses issued to Seufert Brothers Company and plaintiff Williams in 1916, the other licenses having expired when this suit was brought.

The importance of the fishing industry in this state has demanded and had the benefit of the judgment of the lawmakers of the state at several different times. Prior to 1914, it seems no definite point was named in the license for a scow fish-wheel. In

order to further regulate fishing in the Columbia
River, Chapter 188, General Laws of Oregon 1915,
p. 226, was enacted. Section 2 of this act reads
thus:

"The failure to renew the license, or make appli-
cation therefor, for any fish-trap, pound-net, fish-
wheel, or location for other fixed appliance, in any
of the waters of this State on the first day of April
of any year, shall constitute abandonment of the
location."

Section 3, as amended, Laws of Oregon 1919,
p. 648, directs that should the holder of a license
neglect to construct the appliance called for during
two consecutive years covered by his license, said
location shall be deemed abandoned. Section 8,
subd. (a), provides thus:

"Licenses herein required shall be issued to any
qualified person or corporation by the Master Fish
Warden, upon application therefor, and the payment
of the license fees herein required; a separate li-
cense shall be required for each trap, pound-net, set-
net, fish-wheel or other fixed appliance, and for each
seine and gill-net and dip-net, and for each person
trolling for salmon in the waters of the Columbia
River, and for each person other than employees en-
gaged in the canning, packing or curing of food or
shell fish, and for each person other than employees
purchasing or selling food or shell fish, either as
principal, agent or broker."

Section 8, subd. (c), of the act requires all appli-
cations for licenses to specify in detail the location
of any fixed fishing appliance or seine. Section 1,
Chapter 128, General Laws of Oregon 1913, p. 225,
provides as follows:

"It shall be unlawful for the Master Fish Warden
or the Board of Fish Commissioners to grant a li-
cense to any person, firm, partnership or corpora-
tion, to build or set up fish-traps or any other fixed

fishing appliance, or drive piles therefor, in any locality in or on the Columbia River and its tributaries in this State, when in their judgment the same interferes with a prior right of fishing.''

2. Within the limits prescribed by the Constitution, the state, in the exercise of its police power and for the welfare of all of its citizens, can appropriately regulate the catching of fish in the waters of the state or those over which the States of Oregon and Washington have concurrent jurisdiction: *State* v. *Hume,* 52 Or. 1, 6 (95 Pac. 808); *State* v. *Catholic,* 75 Or. 367, 374 (147 Pac. 372, Ann. Cas. 1917B, 913); *Monroe* v. *Withycombe,* 84 Or. 328, 335 (165 Pac. 227).

It appears from the section of the act first quoted, that in the legislative mind it was deemed best for all the citizens of the state, and in furtherance of the interests of the fishing industry, that in order for a person holding a license to fish with a fixed appliance at a certain point in the Columbia River, to protect such right, he must apply for a renewal of the license on or before the first day of April of any year. This arrangement also would tend to prevent a failure to utilize the particular location. Prior to the enactment of Chapter 188 in 1915, ''prior rights of fishing'' do not appear to have been clearly defined or limited.

3, 4. The requirement that one holding a license to fish with a fixed appliance shall at some date as early as the first day of April of any year make application for the renewal of the license in order to retain the location is a reasonable one. Otherwise in cases of the abandonment of such fishing locations, citizens desiring to obtain a license and take fish at such abandoned location apparently could not make their arrangements and prepare for

securing food fish at the proper season, and consequently the industry would be retarded. If there were no regulation, it would tend to confusion and the disturbance of friendly relations between citizens. We believe that the regulations provided for by the statute may well be made without fostering any monopoly or conferring any special privilege upon any citizen which upon the same terms is not granted to all citizens.

It appears that in 1914 there was a conflict of claim between plaintiff, Williams, and the defendant company in regard to a license to fish at the point in question. Prior to that time it seems that plaintiff had fished at different locations in the river and a part of the time at the point involved. In 1915, Seufert Brothers Company applied for a license at the point in controversy, before April 1st, and the license was regularly issued to it. Afterward, on June 8, 1915, Williams applied to the master fish warden for a license to operate a scow fish-wheel at the same point, and apparently copied a portion of the description of the point from the application of Seufert Brothers Company, and we think the application was properly rejected.

In 1916, Seufert Brothers Company applied for a license for a scow fish-wheel at the point described, within the time specified by the statute and the license was issued April 1st. The application of Williams for the same kind of a license at the same point was not made until after April 1, 1916. On May 5, 1916, a license was issued to him to operate a scow fish-wheel at the point described.

We are unable to see how this license to Williams could be issued without conflicting with the license of Seufert Brothers Company, and interfering with its prior right of fishing granted by its license of

96 Or.—12

April 1, 1916. The issuance of the Williams' license does not appear to be in consonance with the spirit of the act of 1913. Two solid bodies cannot occupy the same space at the same time. It appears that there is not space for two scow fish-wheels at the point in question. It seems that the board of fish and game commissioners investigated the matter of conflict between the two licenses, but did not issue any order to cancel the license of the defendant company.

The license issued to plaintiff, Williams, May 5, 1916, was of no force or validity as against the license regularly issued to the defendant company April 1, 1916.

It might happen that a license would be issued to a person by mistake or under such conditions that another person might be entitled to a license to fish at the same place. We do not see how the second license could be issued and be effective without a hearing and adjustment in case of such conflict, and the cancellation of the prior license.

In our view the statute to which we have referred is determinative of the main question in this case. It is therefore unnecessary to consider the matter of title to the land adjacent to the river at the point of controversy. That question, should it arise, can be adjudicated in Wasco County.

The decree of the lower court, as to each of the defendants, will be reversed and the suit dismissed. Neither party will recover costs in either court.

REVERSED. SUIT DISMISSED.

McBRIDE, C. J., and JOHNS and BENSON, JJ., concur.

Denied May 11, 1920.

ON PETITION FOR REHEARING.

(189 Pac. 636.)

*Mr. James G. Wilson, Mr. George B. Guthrie* and *Mr. E. F. Bernard,* for the petition.

*Mr. H. S. Wilson, Mr. A. S. Bennett, Mr. J. O. Bailey,* Assistant Attorney General, and *Mr. George M. Brown,* Attorney General, *contra.*

Department 2.

BEAN, J.—Counsel for plaintiff have filed a petition for rehearing in this case, and, while we do not see our way clear to change our former opinion (reported in 188 Pac. 165) in regard to applications for fishing licenses, we wish to add to our memorandum that after the controversy arose between plaintiff and Seufert Brothers Company in 1914, in regard to fishing at the point in question and the same conflict existed in 1915, the board of fish and game commissioners gave Williams notice and proceeded to The Dalles, Oregon, for the purpose of investigating the respective rights and examining the location of the fish-wheel. They appointed a time for a hearing of the parties. It would not be expected that a record would be made as completely as would be in a court proceeding; but from the letters of the master fish warden and rulings of the fish and game commission we think it is clear that after such investigation and hearing, in the judgment of the fish and game commission, the rights of Seufert Brothers Company to fish at the point designated were superior to those of plaintiff. This

is indicated by the action taken in 1915, and by the letter to Williams from the master fish warden of May 28, 1915.

The circumstances as detailed in our former opinion, and as shown by the record, were such that it was peculiarly a question for the fish and game commission to exercise its judgment and to determine. They apparently found upon viewing the premises, adjacent to the place where applications were made to fish with a scow fish-wheel, that the company was in peaceful possession of the shore or bank, claiming to be the owner thereof; and that the scow fish-wheel could not well be operated without using the shore. The commissioners believed that plaintiff Williams did not have a prior right of fishing at the point in question, but offered to grant a license to him identical with the one issued to him in 1914. They evidently decided that Williams by moving his scow fish-wheel and fishing at different places could not obtain a priority at all of such places.

The testimony in the case does not warrant a court in setting aside the decision of the fish and game commission. As stated by Mr. Justice Johns in *Holmes* v. *Olcott, ante,* p. 33 (189 Pac. 202), in which an opinion was rendered April 13, 1920:

"It was the evident purpose and intent of the legislature to invest the commission with a discretionary power for the protection and propagation of game within the state. * * *"

To reverse the rulings of the fish and game commission where the facts and circumstances of the case warrant the action taken by that tribunal, would be to practically deprive it of any authority in the administration of the laws relating to the fishing industry.

For these reasons, in addition to those mentioned in our former memorandum, the petition for rehearing is denied. ·

AFFIRMED. SUIT DISMISSED. REHEARING DENIED.

McBRIDE, C. J., and JOHNS and BENSON, JJ., concur.