Argued March 25; reversed June 29; rehearing denied
September 29, 1937

# NELSON *v.* SMITH

(69 P. (2d) 1072)

true

*Cecil H. Greene* and *Guy C. H. Corliss*, both of Portland (Beach, Simon & Greene and John M. Pipes, all of Portland, on the brief), for appellant.

*Roy F. Shields* and *Donald K. Grant*, both of Portland (Maguire, Shields & Morrison and Clifford N. Nelson, all of Portland, on the brief), for respondent.

BELT, J. This is an appeal from a decree in equity assessing damages arising out of the commission of a

tort and impressing the amount thereof as a lien upon real property owned by the defendant in the city of Portland.

■ The transcript of the evidence is not here. Hence, it is presumed that the findings of the trial court are supported by the evidence. Error will not be presumed.

From the pleadings the following facts are gleaned: On October 11, 1933, at about 2 o'clock in the morning, the defendant, a resident of California, and one Neil Stewart, both in an intoxicated condition, were, as a joint enterprise, operating an automobile on the public highway in Clackamas county, Oregon. The plaintiff, a state police officer, observing the condition of Smith and Stewart, placed both of them under arrest. While plaintiff was standing on the running board of the car endeavoring to prevent these men from further operating it, the car was wantonly and maliciously driven so close to a telephone pole that, as a result thereof, plaintiff was crushed and severely injured. After the accident Smith returned to California where he has remained for the purpose of avoiding service of summons.

On March 22, 1934, plaintiff commenced an action at law against the defendants Smith and Stewart in the circuit court for Clackamas county. Plaintiff undertook to procure service of summons on Smith by the statutory service of the secretary of state. Such service, however, was quashed upon motion of the defendant and the action against him was finally dismissed on March 7, 1936.

On the day following the filing of the complaint in the action in Clackamas county, plaintiff commenced a suit in Multnomah county to restrain the defendant from a threatened transfer of his property in Multnomah county during the pendency of the action at law.

In the complaint in the suit in equity, plaintiff attached a copy of the complaint in the law action and, by reference, made it a part thereof. It was also alleged that "every allegation contained in said complaint (law action) is true and plaintiff has a good cause of action against the defendants named therein upon the cause of action therein alleged". Service of summons on Smith was made in California.

Defendant appeared specially to quash service but, after motion was denied, filed a demurrer to the complaint for the reasons, (1) That the court had no jurisdiction of the person of the defendant or the subject of the *action*; (2) that the complaint does not state facts sufficient to constitute a cause of *suit*.

While this demurrer was pending plaintiff, with permission of the court, filed an amended complaint wherein the matter of negligence was specifically alleged as set forth in the complaint in the Clackamas county action. It was also alleged that Smith was the owner in fee of certain described real property in Multnomah county, Oregon; that, unless Smith were restrained, he would convey such property for the purpose of hindering and defrauding plaintiff from satisfying any judgment that might be recovered in the law action; and that plaintiff has no adequate or complete remedy at law. In the prayer of the complaint plaintiff asked: (1) That defendant be enjoined from conveying or otherwise disposing of his property pending determination of the action at law and "this suit in equity"; (2) that the amount of damages be determined, "unless such determination shall be made in said action at law pending in Clackamas County"; (3) that the amount of damages be impressed as a lien upon the real property described in the complaint and

that said property be sold to satisfy such lien; and (4) that such further relief be granted as the court shall deem equitable.

Defendant thereupon moved to strike the amended complaint upon the ground that a new and distinct cause of action had been alleged. The court overruled such motion and the defendant then demurred to the amended complaint for the reasons stated in the demurrer to the original complaint and also upon the ground that there was another action pending between the same parties for the same cause. In the meantime, however, an order to quash service of summons had been entered in the Clackamas county action and, on March 7, 1936, such action was dismissed.

The demurrer to the amended complaint having been overruled, the defendant filed his answer denying generally the allegations of the amended complaint and alleging as an affirmative defense the pendency of the Clackamas county action. Plaintiff filed his reply alleging:

"That since the filing of plaintiff's amended complaint in this cause, the service of summons by plaintiff upon the Secretary of State as the agent and attorney of the defendant herein was held by the Circuit Court of the State of Oregon for Clackamas County, upon motion of the defendant herein, specially appearing, to be null, void and of no effect and to give said court no jurisdiction of the person of said defendant, Roderick E. Smith. That at all times since the filing of said action in Clackamas County, defendant, Roderick E. Smith, has remained outside of the State of Oregon for the purpose of evading service of summons upon himself, that he successfully thus evaded service of any summons of process out of said Circuit Court for Clackamas County and that said action was dismissed without prejudice as to the defendant herein by said

court on the 7th day of March, 1936, on the ground that no service of summons had ever been effected on said defendant.''

After issue was thus joined, the cause was heard on the merits by the court ''without the intervention of a jury'', and a decree was entered awarding plaintiff $7,500 damages and impressing the amount thereof as a lien upon the real property described in the amended complaint.

The theory of the plaintiff is that he has no complete and adequate remedy at law and, since the defendant is a non-resident and has real property in this state, equity will grant relief by impressing a lien on such property to compensate plaintiff for injuries arising out of the commission of the tort. Otherwise stated, plaintiff asserts that when a non-resident comes into this state and, while here, commits an assault upon one of its citizens, then leaves the state to avoid service of summons, equity will enforce reparation for the wrong done by impressing a lien upon such property for the amount of the damages sustained. Plaintiff also contends that, since defendant has made a general appearance and has waived trial by jury, the court had the authority to enter a personal judgment against him even though it be assumed that equity has no jurisdiction over the subject matter.

Defendant contends that the court had no jurisdiction over either his person or the subject matter. He asserts that his objection to the jurisdiction of the court over his person was not waived by answering on the merits since he was forced into court under an illegal process and that, at all times, he maintained his objection to the jurisdiction of the court. It is further contended by the defendant that the court

erred in permitting plaintiff to file an amended complaint containing a new and distinct cause of action.

■ Whatever may be the rule elsewhere, it is well established in this state that where a party makes a special appearance for the sole purpose of objecting to the jurisdiction of the court and then, after the denial of the motion to quash service of summons, joins issue on the facts or law and participates in the trial of the cause on its merits, he will not be heard, after an adverse decision, to assert that the court had no jurisdiction over his person. As stated in *Sweeney v. Jackson County,* 93 Or. 96 (178 P. 365, 182 P. 380):

"The law will not allow a party to obtain the benefit of jurisdiction of the court if the decree is in his favor, and repudiate it when the result is adverse."

Also see in support of the above conclusions: *Sealy v. California Lumber Co.,* 19 Or. 94 (24 P. 197); *Duncan L. Co. v. Willapa Lumber Co.,* 93 Or. 386 (182 P. 172, 183 P. 476); *Williams v. Seufert Bros. Co.,* 96 Or. 163 (188 P. 165, 189 P. 636); *State ex rel. v. Norton,* 131 Or. 382 (283 P. 12). An exhaustive note in 93 A. L. R. 1302 lists numerous cases showing conflict of authority. We see no good reason to depart from the rule established in this state since the early case of *Sealy v. California Lumber Co.,* supra, decided in 1890.

■■ In our opinion, the trial court did not abuse its discretion in permitting plaintiff to file an amended complaint some nine months before trial. Amendments to pleadings should be allowed with great liberality before trial if they are essential to a fair trial on the merits of the case. The amendment in the instant case was not prejudicial to defendant. It was germane to the cause of suit as alleged in the original complaint. The amendment pertained more to a change of form than

to one of substance. It was not a departure. The original pleading purported to be in equity as did the amended complaint, although each embodied allegations sufficient to state a cause of action in law. Section 1-906, Oregon Code 1930, provides:

"The court may, at any time before trial, in furtherance of justice, and upon such terms as may be proper, allow any pleading or proceeding to be amended by adding the name of a party, or other allegation material to the cause; and in like manner and for like reasons it may, at any time before the cause is submitted, allow such pleading or proceeding to be amended, by striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or when the amendment does not substantially change the cause of action or defense, by conforming the pleading or proceeding to the facts proved."

■ This court, in construing the above section, has held that a court may, in its discretion, before trial, permit an amendment containing a new cause of action if germane to the controversy before the court: *Talbot v. Garretson,* 31 Or. 256 (49 P. 978); *Lieuallen v. Mosgrove,* 37 Or. 446 (61 P. 1022); *York v. Nash,* 42 Or. 321 (71 P. 59); *Zimmerle v. Childers,* 67 Or. 465 (136 P. 349).

■ Having held that the court had jurisdiction over the person of the defendant, we next inquire: Did it have jurisdiction over the subject matter? It is plain that the circuit court had the power and authority to hear and determine the kind of case before it, although it may be that plaintiff was in the wrong forum. It is also clear that if the amended complaint stated facts sufficient to constitute a cause of suit or an action at law, the pleading was not vulnerable to demurrer nor was it subject to dismissal on motion of the defendant: *McCann v. Oregon Scenic Trips Co.,* 105 Or. 213 (209

P. 483); *Spencer v. Wolff,* 119 Or. 237 (243 P. 548); *Brakebush v. Aasen,* 126 Or. 1 (267 P. 1035); Section 6-102, Oregon Code 1930.

Plaintiff urges that equity had jurisdiction over the cause. In this contention we cannot agree. The suit was in the nature of an equitable attachment. Counsel for plaintiff frankly concede that no case can be found in the books where equity has thus given redress for damages arising out of a tort. It is argued with much plausibility, however, that the strong arm of equity should reach out and seize the property of a nonresident where the party injured has no complete and adequate remedy at law in this state.

The primary right of the plaintiff is purely legal. It is the right to recover damages for injuries arising out of a tort—a matter solely within the cognizance of the law. Equity has no jurisdiction to pass upon a purely legal demand for unliquidated damages. The injunctive relief prayed for in the amended complaint is insufficient to bring the case within the province of equity because such proceeding was ancillary to the enforcement of a purely legal right. The fundamental rule that when equitable jurisdiction attaches it will grant complete relief has no application to the instant case for the simple reason that it never attached in the first instance.

The suit to restrain defendant from conveying his property is in effect an equitable attachment. It does violence to the statute of this state (§ 4-401, Oregon Code 1930) providing when attachments will lie. Relative to defendant non-residents, subdivision 2 of the above section provides that an attachment will lie "in an action upon a contract express or implied" and subdivision 4 provides it will lie "* * * to recover a sum of money as damages, arising from a breach of

any contract, whether made in this state or elsewhere, express or implied, other than a contract of marriage.''

■ It will be observed that the right of attachment under the statute has not been extended to torts. To sustain the contention of plaintiff that the property of the defendant may be thus seized would in effect nullify the statutory rules concerning attachments. No case has been cited, nor can we find any, wherein it has been held that equity has the power to attach or seize property to secure reparation for damages resulting from a tort.

We see no analogy between this case and creditors' suits brought to set aside a fraudulent conveyance where the defendants therein are non-residents. In such cases the general rule does not obtain that the claim must first be reduced to a judgment: *Blundon v. Guy*, 53 F. (2d) 930; *First National Bank v. Eastman*, 144 Cal. 487 (77 P. 1043, 103 Am. St. Rep. 95, 1 Ann. Cas. 626); *Quarl v. Abbett*, 102 Ind. 233 (1 N. E. 476, 52 Am. Rep. 662); Pomeroy's Equity Jurisprudence (Vol. 4) § 1415. Since a judgment in personam cannot be obtained against non-residents, the law does not require the doing of an impossible thing. It should be borne in mind, however, that a suit to set aside a fraudulent conveyance is inherently an equitable proceeding whereas, in the instant case, the primary right involved is one cognizant only in a law action.

Plaintiff stresses *Pennington v. Fourth National Bank*, 243 U. S. 269 (61 L. Ed. 713, 37 S. Ct. 282, L. R. A. 1917F, 1159), as supporting his contention that equity may seize the property of a non-resident to satisfy a claim or obligation arising out of the commission of a tort. In that case

Mrs. Pennington obtained a decree of divorce in Ohio. The defendant non-resident husband had money on deposit in a bank in Ohio. The bank was joined as a party defendant. Upon order of the court, the bank paid money to Mrs. Pennington to satisfy award of alimony. The husband, in an action against the bank, contended that, since he was a non-resident and no personal judgment was obtained against him, his property was taken without due process of law. The United States supreme court held that the power of the state to thus seize the property of the defendant husband was not obstructed by the federal constitution. That the court of Ohio had equitable jurisdiction over the subject matter was unquestioned. Some of the language of the court is quite broad in that it states that such power exists "* * * whether the obligation, sought to be enforced is an admitted indebtedness or a contested claim. It is the same whether the claim is liquidated or is unliquidated, like a claim for damages in contract or in tort." The language used in reference to a tort is not deemed necessary to a decision of the case.

We agree with appellant that equity had no jurisdiction in the instant case. It does not follow, however, that the circuit court had no power to enter a personal judgment against defendant since, by a general appearance, he had submitted to jurisdiction over his person and there was a waiver of trial by jury. The mere fact that plaintiff had mistaken his forum did not justify a dismissal of the case. Section 6-102, Oregon Code 1930, provides:

"No cause shall be dismissed for having been brought on the wrong side of the court. The plaintiff shall have the right to amend his pleadings to obviate any objection on that account."

In construing the above section of the statute, this court in *Spencer v. Wolff*, supra, which was quoted with approval in *Weith v. Klein*, 136 Or. 201 (298 P. 902), said:

"The circuit court had jurisdiction of the cause regardless of the question of whether or not it is a suit in equity or an action at law. No proceeding in the circuit court should be dismissed because addressed to the wrong side of the court. The cause should be disposed of according to its merits in the proper forum notwithstanding the litigants may have mistaken their appropriate remedy."

In *Oldenburg v. Claggett*, 142 Or. 238 (20 P. (2d) 234), Mr. Justice CAMPBELL, speaking for the court in reference to such statute, said:

"This amendment to the statute was intended to enable the parties to a legal controversy, over which the court had jurisdiction either at law or in equity, to have the cause determined, even if the party plaintiff did mistake his remedy. The pleadings in the instant case present a state of facts which gives the circuit court jurisdiction to hear and determine the matter in dispute. Consequently the controversy should have been determined and finally disposed of by the court."

It appears from the record that plaintiff was quite willing to try the cause in either law or equity. The defendant was not desirous of having the case tried in any court. Witness the following colloquy between counsel at commencement of the trial:

"MR SHIELDS (of counsel for plaintiff): I contend, yes, we have a right to proceed in equity, and I contend even if we didn't have the right to proceed in equity, we would have a right to proceed in law. Now, the question I want to ask counsel is: Do you want us to proceed in equity or have it tried at law?

"MR. PIPES: I object to counsel's question, I say that the Court has no jurisdiction under the present

state of the pleadings to try this case as an equity case; and that is as far as my objection has to go, and it is as far as it does go. Now, that is an objection that I make. Unless you obviate that objection yourself, as the statute provides that you can, there is only one thing for the Court to do, and that is to dismiss this proceeding. It does not say that I may obviate it. The statute says that you may obviate it.   *   *   *

"Mr. Shields: We will proceed, your Honor, and give counsel the option of calling for a jury.   *   *   *

"Now, if counsel wants it on the law side, let the record show we are willing for it to go to the law side. If it is not asked to have it transferred to the law side, we are willing to proceed on the equity side.

*     *     *     *     *

"Mr. Pipes: The ruling of the Court is that it shall proceed as an equity suit?

"The Court: Yes."

We conclude that error was committed in proceeding on the equity side of the court. When counsel for defendant objected to equitable jurisdiction, plaintiff, in the language of the statute, should have amended "his pleadings to obviate any objection on that account". It is not the policy of the law that plaintiff should be turned out of court on an alleged meritorious claim. Since the proper forum was in law, the defendant was entitled to the benefit of a jury trial. In our opinion the record does not disclose a waiver of trial by jury. The offer to draw a jury in an advisory capacity to the court sitting in equity did not meet the objection of the defendant. It was the clear statutory duty of the plaintiff to select the proper forum.

It follows that the decree of the lower court is reversed and the cause remanded with permission for plaintiff to apply to the trial court to file an amended

pleading, eliminating equitable matters therefrom, and to proceed at law.

Neither party will recover costs or disbursements.

CAMPBELL, J. (dissenting). This suit arose out of the following facts: The defendant and one Neil Stewart were operating an automobile as a joint enterprise on the Pacific highway near Canby, Clackamas county, Oregon, at about 2 o'clock in the morning on October 11, 1933. They were both intoxicated. The plaintiff, a state police officer, placed them under arrest for driving an automobile on the highway while intoxicated. To prevent the car from being further operated by the defendants, the plaintiff stepped on the running board of said automobile. The defendant said to Stewart: "To hell with the officer, let's go." Stewart started up the car and drove rapidly in a zigzag course down the highway in an attempt to dislodge the officer from the car. Failing in this, the car was wilfully and wantonly driven close to a telephone pole for the purpose of crushing and dislodging plaintiff and plaintiff was crushed between it and the car. The plaintiff was injured very severely. He suffered body bruises, fractures of his eleventh rib, right and left; fractures of his second lumbar vertebra; a compression fracture anteriorally of the third vertebra; a compression of the fifth lumbar vertebra; and severe injuries about the chest and abdomen, the exact nature of which could not be definitely determined.

Plaintiff commenced an action at law against Smith and Stewart in the circuit court for Clackamas county on March 22, 1934, alleging the foregoing facts. After the accident, defendant returned to California where

he has since remained, thus avoiding service of summons. Plaintiff, believing that defendant was the owner of the car, attempted to secure service of summons on defendant by the statutory method of serving the secretary of state. The car not being registered in the name of this defendant, upon motion of this defendant, who appeared specially for that purpose, such service of summons was quashed on March 7, 1936.

On March 23, 1934—the day following the filing of the complaint in the law action in Clackamas county—plaintiff filed this suit in equity against defendant in the circuit court for Multnomah county to restrain defendant from transferring his real property in Multnomah county during the pendency of the action at law. The complaint in the law action, which alleged the facts heretofore set out, was attached to the complaint in the suit in equity, and, by reference, made a part thereof, and in respect to which plaintiff alleged that "every allegation contained in said complaint is true and plaintiff has a good cause of action against defendants named therein, and upon the cause of action therein alleged." Personal service of summons in the equity suit was made on Smith in California.

Defendant, appearing specially, made a motion to quash service, which was denied. Defendant then demurred to the complaint for the reasons: (1) The court had no jurisdiction over the defendant or the subject of the *action*; (2) that the complaint failed to state facts sufficient to constitute a cause of *action*.

On August 15, 1935, before the demurrer had been disposed of, the plaintiff, with permission of the court, filed his amended complaint, in which he realleged the facts constituting his cause of action as they appeared in the complaint filed in the action at law in Clackamas

county. He alleged the filing of the law action in Clackamas county, the motion of defendant to quash services of summons therein and that said motion was still pending. He further alleged that plaintiff was a nonresident of this state and was the owner in fee of certain described real property in Multnomah county, Oregon; that unless restrained by the court, defendant threatened to and would dispose of said real property for the purpose of hindering and defrauding plaintiff from satisfying any judgment he might recover in the law action; that plaintiff had no plain, adequate or complete remedy at law.

Plaintiff prayed for a decree as follows: (1) That defendant be restrained from any transfer or disposal of the property during the pendency of the action at law or the suit in equity; (2) that the court determine the amount of damages due plaintiff unless the same be determined in the action at law; (3) that the amount of damages so determined be impressed as a lien upon the real property and that it be sold to satisfy said lien; (4) and such further relief as the court may deem equitable.

Defendant moved to strike the amended complaint on the ground that a new and distinct cause of action had been alleged. This motion was overruled and plaintiff demurred to the amended complaint on the grounds contained in the first demurrer, and for the further reason that there was another action pending between the same parties. In the interim, the circuit court for Clackamas county granted defendant's motion to quash service of summons in the law action, and said action was dismissed on March 7, 1936.

The court overruled the demurrer to the amended complaint, and defendant filed his answer in the form

of a general denial, and for a further and separate answer plead the pendency of the action in Clackamas county.

Plaintiff filed a reply in which he set out the dismissal of the action in Clackamas county.

The cause was heard to the court without a jury, and a decree was entered awarding plaintiff damages in the sum of $7,500, impressing a lien for that amount upon the real property described in the amended complaint, and ordering said property to be sold to satisfy the amount found due plaintiff. Defendant appeals.

There can be no doubt that the circuit court for Multnomah county secured jurisdiction of the person of defendant by his voluntary general appearance therein and answer to the cause on its merits: *Rogue River Mining Company v. Walker*, 1 Or. 341; *Sealy v. California Lumber Company*, 19 Or. 94 (24 P. 197); *Sweeney v. Jackson County*, 93 Or. 96 (178 P. 365, 182 P. 380); *Duncan Lumber Company v. Willapa Lumber Company*, 93 Or. 386 (182 P. 172, 183 P. 476); *Williams v. Seufert Brothers Company*, 96 Or. 163 (188 P. 165, 189 P. 636); *State ex rel. v. Norton*, 131 Or. 383 (283 P. 12); *Osburn v. Maata*, 66 Or. 558 (135 P. 165); *Herrick v. Wallace*, 114 Or. 520 (236 P. 471); *Anderson v. Guenther*, 144 Or. 446 (22 P. (2d) 339, 25 P. (2d) 146); *Woodburn Lodge v. Wilson*, 148 Or. 150 (34 P. (2d) 611).

The principal contention of defendant is that equity has no jurisdiction in a case arising out of tort to impress a lien upon property within this state belonging to defendant, without plaintiff first reducing his claim to judgment.

This would seem to be the general rule, but there are exceptions.

Mr. Pomeroy, in his work on Equity Jurisprudence, says:

"The distinguishing characteristics of legal remedies are their uniformity, their unchangeableness or fixedness, their lack of adaptation to circumstances, and the technical rules which govern their use. The legal remedies by action are, in fact, only two: recovery of possession of specific things, land or chattels, and the recovery of a sum of money. * * * Equitable remedies, on the other hand, are distinguished by their flexibility, their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use. There is in fact no limit to their variety and application; the court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complete relations of all the parties." Pomeroy's Equity Jurisprudence, 4th Ed. § 109.

In § 111 of the same work, the author continues:

"Equity has followed the true principle of contriving its remedies so that they shall correspond both to the primary right of the injured party, and to the wrong by which that right has been violated. It has, therefore, never placed any limits to the remedies which it can grant, either with respect to their substance, their form, or their extent; but has always preserved the elements of flexibility and expansiveness, so that new ones may be invented, or old ones modified, in order to meet the requirements of every case, and to satisfy the needs of a progressive social condition, in which new primary rights and duties are constantly arising, and new kinds of wrongs are constantly committed."

Mr. Story in his work on Equity Jurisprudence (14th Ed.), § 63, uses the following language:

"Certain principles in equity are established, and dominate in the administration of justice in that field with as much certainty as do principles upon the law

side, so to speak, of the court. But mere precedents are of no avail except to illustrate the extent which principles have been applied. The textwriters disagree, in some respects, in the manner of stating this, but are in harmony in this: While new principles are not to be added to those long established for the government of equitable remedies, the rules not the precedents are to control. There is no vitality in precedents; there is in rules. They are susceptible of expansion along every line necessary to reach new conditions. The ingenuity of man in devising new forms of wrong cannot outstrip such development.''

In *Overmire v. Haworth,* 48 Minn. 372 (51 N. W. 121, 31 Am. St. Rep. 660), the plaintiff was a simple contract creditor, and the husband of defendant was a nonresident who owned property in Minnesota, the legal title to which was taken in the name of his wife, the defendant. Plaintiff sought to impress a trust upon the property to the extent of his claim. The claim had not yet been reduced to judgment and the court in passing judgment upon the question said:

''It must be regarded as the general rule, in this state at least, that the creditor must proceed to recover and enforce a judgment at law against his creditor before he will be allowed to maintain an action of an equitable nature to enforce the statutory trust. But the rule which forbids resort to equity for relief when there is an adequate legal remedy is not to be applied with such strictness as to practically deny to a party having a right against another, legal or equitable, any reasonably available means of enforcing it. It is true that an equitable suit will not be entertained if there is no necessity for resorting to such a proceeding.

''But, even though the law does offer a remedy which may be resorted to, still, if it be not adequate to the requirements of the case, equity should not refuse its aid within the proper scope of its jurisdiction. If the legal remedy be not reasonably available and ef-

fectual, there would seem to be no reason forbidding resort to equitable relief. For instance, a fraudulent debtor may abscond to some distant but known place, as to India, leaving no property within our jurisdiction which can be reached by attachment or ordinary legal proceedings, but leaving property which, by the aid of a court of equity, may be reached and appropriated to the satisfaction of his debts. We think that equity would not refuse to exercise its ordinary jurisdiction in favor of a creditor, under such circumstances, for the reason merely that he might secure a legal recovery and satisfaction in India, but at an expense far greater than the amount of his debt. In such a case, and in others which will readily occur to the mind, it is obvious that the ordinary course of legal proceedings affords in reality no adequate or real means of redress.''

In *Merchant's National Bank v. Paine et al.*, 13 R. I. 592, plaintiff brought a suit in equity, the bill alleging that defendant was indebted to plaintiff in the sum of $5,000, evidenced by a promissory note, and sought to obtain payment thereof out of certain equitable interests received under the will of his father and which he had conveyed to one of his co-defendants for the purpose of defeating the claims of the complainant. Plaintiff also alleged that defendant had absconded and could not be found in the state and had left no property which could be secured by attachment. The defendant demurred to the bill on the ground that the claim had not been reduced to judgment at law and that no execution had ever been sued out thereon. The court said:

"The question is whether a suit in equity can be maintained to enforce payment of a purely legal claim out of equitable assets before the claim has gone to judgment and execution at law. The counsel for the complainant admit that as a rule it cannot; but they contend that the only reason why it cannot is because

a court of equity will not interpose until the creditor has exhausted his remedies at law, and because the best evidence that he has exhausted them is a judgment, when recoverable, with execution sued out thereon and returned unsatisfied for want of property. And they also contend that, when this evidence cannot be procured because the debtor is absent or has absconded, leaving no attachable estate, the court will proceed without it upon other satisfactory proof. They cite a Kentucky case in which this view is fully sustained by judicial decision. *Scott v. McMillen,* 1 Litt, 302. They also cite cases which contain favorable *dicta,* some of which appear to have been expressed after careful consideration. * * *

"Besides these cases, cited by counsel, we have found other cases which emphatically support the same view, cases, indeed, from which it appears that the jurisdiction contended for has been unequivocally affirmed in Kentucky, Virginia, Indiana, South Carolina, and Missouri. * * * *Pendleton v. Perkins,* 49 Mo. 565. In the last cited case the court, after reviewing the other cases, say, p. 568: 'It seems thus to be satisfactorily settled upon authority that when the debtor has absconded, so that no personal judgment can be obtained against him, and there is no satisfactory proceeding by which his property can be reached, a creditor's bill will lie, in the first instance, and from the necessity of the case. It is analogous to a proceeding to subject the equities of a deceased debtor, or to satisfy a debt from a specific equitable fund, as to enforce a lien in neither of which cases is a personal judgment required.'

"If it were true that the only reason for the rule is the exhaustion of legal remedies, we should not hesitate at all to assert the jurisdiction, for very clearly where no legal remedy exists, none can be exhausted, and the reason for the rule would cease, and with the reason the rule itself. *'Cessante ratione legis, cessat ipsa lex.'* There is, however, another reason for the rule, namely, that a court of law is the proper tribunal not only to afford a remedy for legal claims, but also to

adjudicate them. It seems to be well settled, however, that a creditor may proceed in equity without first getting judgment at law, if his debtor be dead. And if he can so proceed, if his debtor be dead, there can be no insuperable reason against his so proceeding while his debtor is alive. * * * If the claim be one that is peculiarly fit for legal, or peculiarly unfit for equitable cognizance, issues can be framed for jury trial. The jurisdiction ought to be, if it can be, upheld, since without it a debtor may have valuable property and yet escape the payment of his debts. Our conclusion is, so far as this point is concerned, that the suit can be maintained.''

The doctrine that equity will subject a nonresident's property to the payment of a claim cognizable at law, without the claim first having been reduced to judgment, is supported by the following cases: *Johnston v. Byars State Bank*, 141 Okla. 277 (284 P. 862); *First National Bank v. Eastman*, 144 Cal. 487 (77 P. 1043, 103 Am. St. Rep. 95, 1 Ann. Cas. 626); *Shuck v. Quackenbush*, 75 Colo. 592 (227 P. 1041, 38 A. L. R. 259); *Blundon v. Guy*, 53 Fed. (2d) 930.

The above citation of authority is not exhaustive of the matter.

The preamble to the Constitution of the state of Oregon recites:

''We, the people of the state of Oregon, to the end that justice be established, order maintained, and liberty perpetuated, do ordain this constitution.''

''To the end that justice be established, the people ordained our constitution'': *Mount v. Welsh et al.*, 118 Or. 568 (247 P. 815). Article 1, § 10, of the Constitution of Oregon, provides: ''* * * and every man shall have remedy by due course of law for injury done him in his person, property, or reputation.'' Article 7, § 3 of the Constitution of Oregon provides: *''In*

*actions at law,* where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, * * *." (Italics ours.)

This constitution was adopted by the people of the state of Oregon September 18, 1857. The state was admitted to the Union and the constitution went into effect February 14, 1859. The first meeting of the legislative assembly under this constitution was held September 8, 1862. Some of the members of the constitutional convention were also members of this assembly. This legislative assembly proceeded to enact a code of laws in conformity with the spirit of the constitution. It adopted quite an elaborate set of rules governing the jurisdiction of the courts. It enacted into law, rules and regulations governing the jurisdiction and procedure for the enforcement of private rights and the redress of private wrongs in actions at law: § 1-101, et seq., Oregon Code 1930. This assembly further enacted:

"The enforcement or protection of a private right, or the prevention of or redress for an injury thereto, shall be obtained by a suit in equity in all cases where there is not a plain, adequate and complete remedy at law, and may be obtained thereby in all cases where courts of equity have been used to exercise concurrent jurisdiction with courts of law, unless otherwise specially provided in this title. * * *". § 6-101, Oregon Code 1930.

The same legislature and subsequent legislatures then enacted into law other provisions providing for the prosecution of many different kinds of suits in equity such as: General provision relating to suits in equity, §§ 6-101 to 6-115, Oregon Code 1930; issues, their trial, and the mode thereof, §§ 6-201 to 6-210, id.; mode of enforcing a decree, §§ 6-301 to 6-302, id.; injunction,

§§ 6-401 to 6-406; foreclosure of liens upon real or personal property, §§ 6-501 to 6-513, id.; suits for the partition of real property, §§ 6-601 to 6-642, id.; suits by and against executors, administrators, legatees, heirs, or devisees, §§ 6-701 to 6-717, id.; suits by persons interested in trust for benefit of estate, §§ 6-801 to 6-817, id.; suits to declare void or dissolve the marriage contract, §§ 6-901 to 6-917, id.; suits to declare adverse claims to real property, and to cancel a patent wrongfully issued therefor, §§ 6-1001 to 6-1002, id.; and ascertaining and establishing boundaries, §§ 6-1101 to 6-1105. In every one of these subjects of litigation a trial by jury has been dispensed with.

The legislature then seemed to realize that it would be impossible to provide practical methods for the redress of every injury that might arise where there would be no "plain, adequate and complete remedy at law." It therefore placed in the court the power to provide a procedure that would meet such an exigency, by enacting the following section:

"When jurisdiction is, by the organic law of this state, or by this Code or any other statute, conferred on a court or judicial officer, all the means to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of proceeding be not specifically pointed out by this Code, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code." L. 1862; § 28-1715, Oregon Code 1930.

This court, speaking through Mr. Justice THAYER, in applying the above section in *Aiken v. Aiken*, 12 Or. 203 (6 P. 682), said:

"There need, therefore, be no failure of justice, under the jurisprudence of this State, in consequence of the mode of proceeding pointed out being inadequate to afford a remedy in a particular case, as any remedy

in such case may be adopted, subject to the qualification mentioned. It is beyond the scope of legislative wisdom to prescribe a specific remedy for every class of cases that may arise in the complication of human affairs, and it was not attempted; but ample provision was made to prevent a party from being left remediless in case of an infringement upon his legal rights, and the court must of necessity recognize the provision and carry it out when a proper case is presented.''

Section 10 of Article 1 of our constitution certainly means that a person who is injured in his person or property in this state shall have a remedy for such injury in this state, and that he shall not be required to follow the one who committed the injury to other states or countries in order to receive redress, when the wrong-doer has property within this state.

In the instant case, the defendant remained without the state of Oregon, preventing personal service of summons upon him, thereby depriving the court of the means of entering a personal judgment against him in an action at law. He owns property within the state which the plaintiff is powerless to reach through an action at law. The defendant came into the state, violated the state law by being intoxicated upon the public highways of the state. He again violated the state law when he resisted arrest. He again violated the state law when he wantonly and wilfully injured plaintiff, a state policeman, who was attempting to arrest him. Now he comes before this court asking us to protect him against the legitimate claim of plaintiff. When he thinks the law is in his favor, he cries out aloud for its enforcement, but at other times flagrantly disregards it, and injures one whose duty it is to enforce it. The plaintiff is a state policeman who attempted to protect the law-abiding citizens in their lawful use of

the highways, and also to protect defendant from the probable consequences of his drunken condition. In order to effect the arrest of defendant and his companion who were operating an automobile while intoxicated, plaintiff stepped on the running board of the car. When he did this, defendant said: ''To hell with the officer, let's go.'' Then the defendant's companion speeded up his automobile, zigzagged across the highway and when they failed in their purpose of throwing the officer from the car in that manner, they tried to, and did, crush him against a telephone pole, injuring him severely.

As above stated, the plaintiff is prevented from seeking redress in an action at law, so he came into a court of equity and asked the court to restrain defendant from transferring certain real property situate in Multnomah county, Oregon, until such time as the court could adjudicate what amount of damages will compensate him for his injuries which defendant ''wantonly and wilfully'' inflicted upon him. And surely the state of Oregon is strong enough and just enough to protect the rights of its citizens and to compel compensation from one who has trespassed upon those rights, at least to the extent of the property belonging to such a one, located within the state.

Much is heard nowadays of conferring the rule-making power upon the courts and of simplified procedure. Congress has conferred on the United States supreme court the rule-making power governing procedure in the federal courts. Here is an instance where the legislature of this state has already conferred that power upon the courts of this state, and we should not refuse to accept the responsibility of providing for that procedure.

The constitution, as adopted in 1857, provided for the jurisdiction of the several courts, and § 9 of Original Article 7 gave to the circuit court:

"All judicial power, authority, and jurisdiction not vested by this constitution, or by laws consistent therewith, exclusively in some other court, shall belong to the circuit courts; . * * *"

When Article 7 was amended in 1910, it was amended to read as follows:

"The judicial power of the state shall be vested in one supreme court and in such other courts as may from time to time be created by law." § 1, Article 7, Constitution of Oregon.

"The courts, jurisdiction, and judicial system of Oregon, except so far as expressly changed by this amendment, shall remain as at present constituted until otherwise provided by law." § 2, Article 7, Constitution of Oregon.

The legislature has not seen fit to change Original Article 7, in respect to the jurisdiction of the circuit court, and this section has been retained as a statute of the state, so the circuit court is still a court of general jurisdiction.

Admitting for the sake of the argument that the plaintiff should follow the defendant and begin his action in the state where the defendant may be found (assuming that the courts of such state would entertain actions arising out of torts committed in another state), it would then be necessary in order to subject the property in suit to the satisfaction of that judgment to return to this state and commence a suit on that judgment and attach the property owned by defendant in this state. And when such judgment was established as a judgment in this state, the court could order the property sold for its satisfaction. But if defendant, in

the meantime, has transferred this property to an innocent third party, plaintiff would be without redress. Or even should defendant transfer it fraudulently, it would be necessary for plaintiff to begin a suit to have such transfer set aside. Such procedure would be neither plain, adequate or complete. By the time plaintiff pursued his remedy on such a devious pathway, the amount he would recover would all be dissipated in court costs and counsel fees. The net result would be the same as the final outcome in *Jarndyce v. Jarndyce,* or the successful collection by Mark Twain on the beef contract with the United States government.

This court has frequently said that what you cannot do directly, you cannot do indirectly. The converse of that is, and should be equally true: What you can do indirectly, you can and should be able to do directly. And that is what plaintiff is doing in this suit.

In *Williams v. Pacific Surety Company,* 66 Or. 151 (127 P. 145), this court, speaking through Mr. Justice McBRIDE, said:

"Article 1, Section 10, of our Constitution provides that 'every man shall have remedy by due course of law for injury done him in person, property or reputation,' and in pursuance of this provision (Section 983, L. O. L.) [§ 28-1715, Oregon Code 1930] provides that 'when jurisdiction is, by the organic law of this state, or by this code, or by any other statute conferred upon a court or judicial officer all the means to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of the proceeding be not specifically pointed out by this code, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code.' This wipes out common-law procedure, as such, with all its delays and technicalities, and leaves the court free to adopt such common-law procedure when in conformity with the spirit of the code, and to reject it when a procedure

better calculated to facilitate the administration of justice presents itself."

In the instant case, the defendant has had actual notice and has voluntarily appeared in this suit. Before the court will issue an order to restrain the transfer of the property the plaintiff will be required to put up a good and sufficient bond to compensate defendant for any damages suffered if such injunction is wrongfully prosecuted: § 6-402, Oregon Code 1930. No possible injury could result to defendant by such a procedure.

This is suit in equity. The right of trial by jury in civil cases is only granted by the constitution in action at law where the amount involves over twenty dollars: Article 7, § 3, Constitution of Oregon. The constitution does not say that in every legal controversy between litigants that the right of trial by jury shall be preserved. The subject of the instant suit is an injunction. An equity court has always had jurisdiction over this subject and is specially granted such jurisdiction by the code of the state: § 6-401, *et seq.*, Oregon Code 1930.

Mr. Taylor, in his work on "Due Process of Law", p. 279, quotes from *Ex Parte Wall*, 107 U. S. 265, 279 (27 L. Ed. 552, 2 S. Ct. 569), in which the United States supreme court made the following observation in regard to due process of law:

"It is a mistaken idea that due process of law requires a plenary suit and a trial by jury, in all cases where property or personal rights are involved. The important right of personal liberty is generally determined by a single judge, on a writ of *habeas corpus,* using affidavits or depositions for proofs, where facts are to be established. Assessments for damages and benefits occasioned by public improvements are usually made by commissioners in a summary way. Conflicting claims of creditors, amounting to thousands of dollars, are often settled by the courts on affidavits or deposi-

tions alone. And courts of chancery, bankruptcy, probate and admiralty administer immense fields of jurisprudence without trial by jury. In all cases, that kind of procedure is due process of law, which is suitable and proper to the nature of the case, and sanctioned by the established customs and usages of the courts."

A court of equity once obtaining jurisdiction of the subject matter and the persons may retain such jurisdiction and administer complete relief: *Howe v. Taylor,* 6 Or. 284; *Shultz v. Shively,* 72 Or. 450 (143 P. 1115); *O-W. R. & N. Co. v. Reed,* 87 Or. 398 (169 P. 342, 170 P. 300); *Creason v. Muetzel,* 115 Or. 591 (239 P. 195); *Crossen v. Campbell,* 102 Or. 666 (202 P. 745); *American Surety Company v. Hattrem,* 138 Or. 358 (3 P. (2d) 1109, 6 P. (2d) 1087).

The contention that the amended complaint changed the cause of suit is untenable. The very same evidence that it would require to prove the original complaint would be necessary to establish the allegations of the amended complaint. Great liberality is permitted in the amendment of pleadings before trial, and the court did not abuse its discretion in allowing the amendment to be made changing the form and not the substance of the complaint. The amendment was made nine months before trial: § 1-906, Oregon Code 1930; *Sangren v. Cain Lumber Company,* 125 Or. 375 (264 P. 865); *Zimmerle v. Childers,* 67 Or. 465 (136 P. 349); *York v. Nash,* 42 Or. 321 (71 P. 59).

Defendant had his cause tried before a just and an impartial judge in a duly constituted court regularly organized in conformity with the constitution and laws of the state in which the cause arose. He was permitted to interpose his defense; he was represented by able counsel; he was permitted to cross-examine every witness who testified in favor of plaintiff; he was given

compulsory process to procure any witness he desired to aid him in his defense; and he was permitted to offer any competent evidence that he wished to offer. He does not complain that the court did not reach a just conclusion on the evidence introduced. At least he has not brought a transcript of the evidence to this court so we must assume that the evidence fully justified the court's findings. Defendant's only contention is that the court did not follow the correct procedure in arriving at a just determination.

For the foregoing reasons, I cannot concur with the majority opinion, nor with those of the other dissenters, and the decree of the circuit court should be affirmed.

———

ROSSMAN, J. (dissenting). The outcome of this cause, in my opinion, must be determined by an interpretation of § 1-906, Oregon Code 1930, which states the circumstances under which pleadings may be amended. It is well to remind ourselves at the outset that service upon the defendant (appellant) was obtained in another state—California. It was substituted service in supposed compliance with § 1-508, Oregon Code 1930. Under it no personal judgment could have been entered against the defendant in the absence of a personal appearance by him: § 7-105, Oregon Code 1930. Promptly after the service had been made the defendant challenged it, contending that neither § 1-506 nor § 6-111, Oregon Code 1930, which delineate the circumstances under which substituted service can be made, authorized the service which was actually made. The motion was denied, but it is believed that it should have been allowed; and the fact that the plaintiff does not now contend that those sections authorized the

service, but relies upon the defendant's subsequent appearance, is a strong indication that the belief just expressed is not a mistaken one.

The complaint, which was filed in Multnomah county, sought nothing more at the time of the defendant's appearance than an equitable attachment of four Portland lots. It sought no personal judgment. It averred that the plaintiff had instituted an action at law against the defendant in Clackamas county; that the defendant owned the property just mentioned; and that he planned to dispose of it for the purpose of defrauding the plaintiff before the action could be prosecuted to judgment. The prayer follows:

"Plaintiff prays for a decree of this court restraining and enjoining the defendant, his successors and assigns, from selling or conveying or otherwise disposing of said real property or any part thereof pending the final determination of said action at law and awarding to plaintiff such other and further relief as to the court may seem equitable."

The pleading did not mention the nature of the plaintiff's claim nor its amount except so far as was indicated by a copy of the complaint in the law action which accompanied the pleading as an exhibit. That complaint, in the usual form of a personal injury action, averred that the negligence of the defendant and one Neil Stewart was responsible for the injury to the plaintiff which is mentioned in the decision of the majority. It demanded judgment against them in the sum of $35,000. The majority agree that the court had no power to grant any of the relief which the plaintiff sought in the equitable attachment suit. They point out that an impounding of his property was not authorized by our laws. While the complaint was in that form the defendant made his appearance, and then—but not

until then—the plaintiff made the amendments which are now under consideration. They infused into the equity complaint the averments of the law action. At this point the plaintiff dismissed the personal injury action which he had filed in Clackamas county. In holding that the complaint as amended states a cause of action, the majority disregard totally, as they are bound to do, all of the averments which constituted the complaint in its unamended form, and regard only the new material. They disregard the original averments because those averments state no cause cognizable by our laws. In other words, the complaint in its original form was a nullity. It was only the material borrowed from the tort action that enabled it to amount to a statement of a cause of action. Thus, the pleading was not amended, for it is impossible to amend a nullity. When the averments of the law action were transferred to the sheets upon which the equity suit was written those sheets, for the first time, contained the statement of a valid cause. Thus, after the defendant had appeared, the complaint underwent a complete change; a good cause was substituted for a nullity. He thought that he was appearing in a suit which could not be maintained (and the opinion of the majority justifies his belief), but discovered that for it there was substituted a tort action seeking a personal judgment against him in the sum of $35,000. Although his appearance was in the Multnomah county suit only, he discovered that through the court's ruling he had also appeared in the Clackamas county action, which was accomplished by incorporating the latter into the former.

Section 1-906, Oregon Code 1930, provides:

"The court may, at any time before trial, in furtherance of justice, and upon such terms as may be proper, allow any pleading or proceeding to be amended by

adding the name of a party, or other allegation material to the cause.  *  *  *

The majority rely much upon *Talbot v. Garretson,* 31 Or. 256 (49 P. 978). That decision summarizes its interpretation of the sections of our code pertaining to amendments in the following language:

"The section quoted plainly provides for two classes of amendments, one made before trial and the other after the trial has begun, and before the final submission of the case. In the former, no limitation is placed upon the power of the court to allow an amendment except that it must be 'in furtherance of justice,' and, if a new allegation is added, it must be one 'material to the cause'; while in the latter the power is restricted to such amendments as do not substantially change the cause of action or defense.

"It follows, we think, that it is within the power of the trial court to allow, before trial, an amended complaint to be filed containing a new cause of action or suit material to the subject matter of the controversy then before the court. A plaintiff cannot, of course, abandon his original cause of action or suit, and substitute an entirely new and different one, because in such case the new pleading would not be an amendment, but a substitution for the original."

*Zimmerle v. Childers,* 67 Or. 465 (136 P. 349), *York v. Nash,* 42 Or. 321 (71 P. 59), and *Lieuallen v. Mosgrove,* 37 Or. 446 (61 P. 1022), also cited by the majority, add nothing to the rule stated in the above excerpt.

In the instant case the subject matter of the suit, as is clearly indicated by the sections of our code under which the substituted service was made, was the real property. After the amendment the subject matter was a tort. Originally the complaint tendered nothing but an issue of law; as amended it tendered an extensive issue of fact. Originally the plaintiff sought no

personal relief against the plaintiff; after the amendment he sought nothing against the real property, but asked for personal judgment against the defendant.

Had the plaintiff sought to amend his equity complaint by adding anything to it material to that cause, that is, his purported right to impound the four city lots in Portland, he certainly would have had a right to do so. Likewise he could have made any amendments (had he possessed the needed facts) necessary to transfer that cause to the right side of the court, if it was not already there: § 6-102, Oregon Code 1930. But nothing contained in the amendments were in any manner necessary to improve his demand that the lots be impounded, or to improve in any manner the prospects of that cause. As indicated by the above-quoted decision, the plaintiff had no right to abandon the suit and to substitute for it an entirely different cause. It is true that in the purported equity suit and in the legal action he was seeking to some extent to gain eventually relief for a single alleged wrong; but, as a matter of fact, the one was merely ancillary to the other. None of these circumstances make the two causes similar. Dean Clark's valuable volume on Code Pleading (page 505), in defining the present status of the rule governing amendments before trial, states that liberality has been achieved by accepting a "broader concept of the cause of action". No comment is necessary, in addition to the foregoing, to make it clear that the two causes were entirely different. Nothing was gained by permitting the amendments except to enter the appearance of the defendant in a cause contrary to his wishes. This was accomplished even after the court had erroneously overruled his motion to vacate the substituted service.

But it is contended that the averments which were added to the equity complaint by the amendments were

already parts of that pleading because in its original form the plaintiff attached to it as an exhibit the tort action complaint. The equity complaint referred to the latter as follows: "Every allegation contained in said complaint is true and plaintiff has a good cause of action against the defendants named therein upon the cause of action therein alleged. The plaintiff hereby adopts as a part of this complaint each and every allegation contained in said complaint." If all of the averments of the tort action complaint were a part of the equity suit complaint, then the two causes were unnecessary; one would have sufficed. The prayer of the equity suit previously quoted renders it clear that the plaintiff entertained no thought that he had combined the tort action into the suit. It is believed that the tort action complaint was attached to the equity complaint merely for the purpose of supporting the suit by amplifying and making more definite its averments. In other words, he sought to exhibit to the equity judge the fact that he believed he had a claim capable of supporting an equity attachment.

I believe that § 1-906, Oregon Code 1930, did not authorize the amendment which the court permitted. So believing, the complaint reverts to its former condition, and even the majority do not believe that in its unamended form it stated a cause of suit.

For the foregoing reasons, I dissent.

RAND, J. (dissenting). In addition to those assigned by other members of the court, I think there is another reason why the judgment must be reversed.

As has already been pointed out, there is no statute which authorizes a court of equity to enjoin the defendant in a tort action from transferring his prop-

erty pending the determination of the action. Nor does a court of equity have jurisdiction to enjoin a transfer merely upon the ground that otherwise a defendant may transfer his property and become execution proof before the action can be determined. If it could be done in this case, then in every case the plaintiff in a law action, where a money judgment is sought, may go into a court of equity and obtain an order restraining the defendant from making any transfer of any property, real or personal, pending the determination of the action.

Certainly, the maxim that where there is a right there is a remedy does not warrant such a procedure. It has been said that the mission of equity jurisdiction is and always has been to supply a remedy either where there is no remedy or the remedy provided by the law is inadequate to the ends of justice in the particular case in hand. As said by Professor Schofield in Constitutional Law and Equity, vol. 2, p. 882:

" * * * So far as a question in equity jurisdiction is concerned, it makes no difference whatever what the subject-matter of the controversy is; the sole point in a question in equity jurisdiction is the existence or adequacy of another remedy provided by the law. As a general proposition, other remedies provided by the law have been found adequate in the past, and are likely to be found adequate in the future, where no question of public or private property rights is involved."

Particularly applicable to this case is the rule of law stated by Mr. Justice Hunt in *Rees v. Watertown*, 19 Wall. 107, 124, 125 (22 L. Ed. 72), where, speaking for the supreme court of the United States, he said:

"The want of a remedy, and the inability to obtain the fruits of a remedy, are quite distinct, and yet they are confounded in the present proceeding. To illus-

trate: the writ of *habere facias possessionem*—is the established remedy to obtain the fruits of a judgment for the plaintiff in ejectment. It is a full, adequate, and complete remedy. Not many years since, there existed in Central New York combinations of settlers and tenants disguised as Indians, and calling themselves such, who resisted the execution of this process in their counties, and so effectually that for some years no landlord could gain possession of his land. There was a perfect remedy at law, but through fraud, violence, or crime, its execution was prevented. It will hardly be argued that this state of things gave authority to invoke the extraordinary aid of a court of chancery. The enforcement of the legal remedies was temporarily suspended by means of illegal violence, but the remedies remained as before. It was the case of a miniature revolution. The courts of law lost no power, the court of chancery gained none. The present case stands upon the same principle. The legal remedy is adequate and complete, and time and the law must perfect its execution.''

Certainly no one can contend that the remedies provided by law in tort actions have been found inadequate in the past or are likely to be found inadequate in the future, and, in such actions, it is no part of the equity jurisdiction to enjoin the transfer of property pending the determination of such actions so as to enable the plaintiff to obtain the fruits of his remedy, upon the mere ground that the remedy provided by law is inadequate.

Professor Pomeroy, in his work on Equity Jurisprudence, vol. 1, 3 Ed., section 62, in the footnote on page 66, quotes from *Johnson v. Crook*, L. R. 12 Ch. Div. 639, 649, the language of Jessel, M. R., who, he says, is one of the most clear-headed and able judges of this generation, as follows:

'' * * * when they (referring to equity judges) state what the law is, they do not mean, as might have

been said two or three centuries before, that that was law which they thought ought to be law."

This ought to sufficiently answer the suggestion which has been made that, because of the defendant's nonresidence and the inability of the plaintiff to get personal service in the law action upon the defendant, equity will supply a remedy by enjoining the nonresident defendant from transferring his Oregon property pending the determination of the law action. If there is such a rule of law, it can come only from some statute and not from a new principle of equity created by a court of equity because of some supposed necessity.

As has already been pointed out, our statute does not permit the attachment of property in a tort action, regardless of whether the defendant is a resident or a nonresident, and regardless of whether or not the defendant has property within the state. Nor is there any principle of equity which permits a court of equity to enjoin the transfer of property pending the determination of a tort action, or in aid of such action. The injunction, therefore, was issued by the circuit court for Multnomah county, restraining the defendant from transferring his property pending the determination of the action at law then pending in the circuit court for Clackamas county, without authority and is void, and this affords one of the principal reasons which I think requires the reversal of this judgment. The plaintiff obtained an injunction without any authority of law whatever for doing so. His purpose necessarily was to wrongfully tie up the defendant's property until he could be compelled, in order to have the property released, to go into court and move for the dissolution of the injunction. Whether intended so or not, it was a fraud upon the courts and brought the defendant into

court and caused him to become subject to the jurisdiction of the court, and it was equivalent to bringing the defendant into court under subpoena or process and came within the principle that when a nonresident comes into a state to defend his suit he is usually exempt from service of process. See Brown on Jurisdiction, 2 Ed., section 42, and cases there cited. This principle I think should be applied in the instant case.

In *Belknap v. Charlton*, 25 Or. 41 (34 P. 758), a writ of attachment had been issued and certain moneys belonging to the defendants had been attached but no summons in the action was served upon the defendants. Some three months after the action was commenced and the writ of attachment had been served, the defendants appeared specially by their attorney for the purpose of applying to the court to discharge the attachment because the action had been commenced in the wrong county, and because no service had been made upon them, which motion being overruled, judgment was rendered against them by default. The court held that their appearance was no waiver of process. In disposing of that question the court, among other things, said:

"* * * Nothing less than the express language of a statute, or the necessary implication therefrom, or the overbearing weight of authority, will justify a court in holding that a defendant in an action commenced in the wrong county, in violation of section 44 of the Code, could not appear and apply for the discharge of an attachment against his property, for irregularities, without being required to submit himself to the jurisdiction of the court for the purpose of the entire action; and it is not material in such case, whether the motion happened to be well founded or not, but the question is, did it go to the merits, or was it based upon some technical grounds supposed to be sufficient to render the attachment invalid. If a de-

fendant may not thus appear and resist what he supposes to be a wrongful attachment without subjecting his person to the jurisdiction of the court, he must either suffer his property to be held under a pretended attachment for an indefinite time, or waive a statutory right to be sued in the county where he resides or may be found. This the law will not exact or require.''

In the instant case, the defendant was compelled to come into court to free his property from an unauthorized order made by the court; in other words, he was enticed into court by a trap, whether intentional or otherwise, set for him by the plaintiff, and the principle applied by Mr. Justice BEAN in *Belknap v. Charlton*, supra, should be applied in this case. Having been brought into court and having, by the rulings of the court and the action of the plaintiff, been compelled to submit himself to the jurisdiction of the court, if this judgment can be sustained, it will be a denial of justice.

In this connection, it should be borne in mind that the automobile which caused plaintiff's injuries was owned and operated by one Neil Stewart, who was driving it at the time, and it was his action which caused the injuries complained of. It was alleged that the defendant was an occupant of the car and that both he and Stewart were intoxicated at the time, and, while plaintiff was attempting to arrest them, the injuries were sustained. It is also alleged that when arrested and while the plaintiff was standing on the running board of their car, this defendant said to Stewart: "To hell with the officer, let's go", and Stewart started up the car and crushed the plaintiff between the side of the automobile and a telegraph pole. If these allegations are true, they evidence an evil disposition upon the part of the defendant but the law measures the con-

duct of men by the same standard and protects the legal rights of a bad man the same as it does those of one who is good. The defendant's legal rights should not be disregarded because of the conduct referred to, if he was in fact guilty of the things charged against him. Bad cases are said to make bad laws. Such should not be the result in this case. The questions involved here are so fundamental and far-reaching in their character that they ought not to be controlled by any prejudice against the defendant or by the natural sympathy which all men feel for an officer who is injured in the discharge of his duty.

For these reasons and because of those offered by Mr. Justice ROSSMAN in his dissenting opinion, with which I concur, I also dissent from the majority opinion.